## Hill *et al. versus* Canfield *et al.*

1. Requiring a party to state what he intends to prove by a witness is in the discretion of the court below and its refusal is not assignable for error.

2. In trover for rafts converted at Pittsburg and sold by defendants at Cincinnati, *held*, under the circumstances, that it was error to receive evidence of the price of timber at Cincinnati.

3. If Cincinnati had been the only market, evidence of the prices there, less the cost of running, might have been proper.

4. Defendants in trover had a case had it not been for the plaintiff's testimony. *Held* to be error to charge that the plaintiff was entitled to recover.

5. The cases in which more than compensation may be allowed in trover are those of heir-looms, family pictures and the like, and where there is fraud, violence or outrage.

November 22d 1867.   Before THOMPSON, STRONG, READ and AGNEW, JJ.   WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Allegheny county:* No. 98, to October and November Term 1866.

This was an action of trover, brought to December Term 1865, in which George H. Canfield and J. B. Poor were plaintiffs, and Jake Hill, Andrew Jackson, Schuyler Jackson, David Jackson, A. F. Baum and John Carrier were defendants, to recover damages for the conversion of three rafts of timber, containing 16,221 cubic feet.

On the trial, before Mellon, A. J., the plaintiffs offered John Shoup as a witness: the defendants required that they should state in advance what they intended to prove by the witness. The plaintiffs denied their right. The court, without requiring plaintiffs to state what they proposed to prove, admitted the witness and sealed a bill of exceptions. There was evidence of the possession of the timber by the defendants.

The witness testified that the timber in question had belonged to himself and William Wilkinson; he, witness, sold it to Canfield & Poor on the 4th of October 1865; they paid him and took possession of it. He had previously authorized Thomas Stevens to sell it. They also offered in evidence the deposition of Henry Whately, who lived in Cincinnati, who testified: He bought the timber of Baum, and gave his notes for its payment to Carrier & Baum; it was bought below Pittsburg, to be delivered in Cincinnati; that he gave 25½ cents per foot, delivered there; that was the average price of timber. Defendants objected to all the parts of the deposition as to the price of timber either below Pittsburg or at Cincinnati, when he purchased it.

The court admitted the evidence, and sealed a bill of exceptions. The plaintiffs afterwards withdrew the deposition.

Thomas Stevens testified: He was authorized to sell the timber; a sale of it was made by Jake Hill to Carrier & Baum, about the 1st of October; witness was consulted by Hill, and consented

[Hill v. Canfield.]

because Hill said Shoup had authorized him to sell it at 12 cents; Baum in a day or two said to witness that Poor alleged he had bought it, and witness told Baum that he knew Poor & Canfield had not bought it, for Canfield had said he had offered Shoup 10 or 11 cents for it, and that Canfield wanted to settle for it with witness for 12 cents, when Shoup was in New York; 12 or 13 cents were about the ruling rates; Shoup said to witness that they proposed to give somebody the odd cent, and he would not stand that; witness gave no authority to Hill to sell the timber.

The defendants gave in evidence a bill of sale made by Hill for Shoup and Wilkinson, in which two notes were specified—apparently the consideration for the timber; also the following letter and receipt for a note, one of those mentioned in the bill of sale.

"Pittsburg, October 1st 1865.

"Jake Hill, Esq.:

"Dear Sir:—Am informed that you have sold the Shoup & Wilkinson timber to Baum. If so, I claim it all wrong, as Mr. G. W. Canfield had an arrangement with Shoup for the timber, and Baum never would thought of buying it if I had not talked to him last night about selling it to him. All I ask is fair play in the matter, and would like to see you in regard to the matter, and it is probable we can make it satisfactory to all parties.    Yours, truly,

"J. B. POOR."

"Received of Shoup & Wilkinson, per Jake Hill, Carrier & Baum's note for $162, at four months, for our interest in three rafts pine timber containing 16,221 feet, our interest being one cent per foot.

"POOR & CANFIELD."

"October 2d 1865."

There was also evidence in rebuttal, that on the day Poor & Canfield bought the timber, Hill & Jackson called at the office of Mr. Dilworth, to get from Poor the two notes given for the timber; Shoup was there. Poor gave up one of them, and on Jackson saying that Shoup might sell the timber and Carrier & Baum would get nothing for the note; the other note was then given up. Neither Baum nor Carrier was there. Hill and Jackson took the notes away. The plaintiff offered Wilkinson as a witness. He was objected to because the plaintiffs claimed under him; the court admitted him and sealed a bill of exceptions. He testified that he gave Hill no authority to sell. Shoup also testified, that he did not assent to Hill's sale; he asked Hill if he knew any one who would buy it. Hill mentioned Jackson; but he would not give the price.

[Hill *v.* Canfield.]

The plaintiffs' point was :—

Under all the evidence the plaintiffs are entitled to recover, and if such facts or circumstances have been given in evidence as to satisfy the jury that there was an outrage in the taking, and oppression in the detention, then the jury may add to the value of the property and interest such compensation as will make the plaintiffs whole.

This was affirmed.

The defendants points were :—

1. In no event can the plaintiffs, in this action of trover, recover more than the actual value of the three rafts of timber, and interest thereon—the value to be fixed by the market value of the timber at the time when, and the place where, the alleged trover and conversion took place.

2. If the jury believe that a sale of the timber was made by Jake Hill, with the assent and concurrence of Thomas Stevens, to John Carrier and Andrew F. Baum, on or prior to the 3d day of October 1865, and that they gave their notes for the price of the same, and that the plaintiffs either joined in said sale or assented thereto, and received one of the notes given for the price of the timber, they would be estopped from alleging any want of authority in Hill to make the sale ; and this, whether such sale were good as against Shoup and Wilkinson or not.

3. If the jury believe that a sale of the timber in controversy was made by Jake Hill, with the assent of Thomas Stevens, to Carrier & Baum, on or prior to the 3d day of October 1865, and that they gave their notes for the price of the same ; and that the plaintiffs either joined in said sale or assented thereto, and received one of the notes given for the price of the timber, such sale would be good as against them for the purpose of vesting the title to the timber in Carrier & Baum, and the title having thus become vested in Carrier & Baum, as against the present plaintiffs, Carrier & Baum could not be divested of their title, either by the plaintiffs handing over the notes given for the price of the timber to Hill or Andrew Jackson, in the absence and without the knowledge and consent of Carrier & Baum, or the plaintiffs' subsequent purchase of the timber from Shoup and Wilkinson.

The points were denied by the court, Mellon, A. J., saying, as to the 3d point, that it was too complicated to separate the truthful part from that which was erroneous.

The verdict was for the plaintiffs for $4246.41.

The defendants took a writ of error. The specifications of error were :—

1. That the court did not require the plaintiffs to state what they intended to prove by Shoup.

2 and 4. The admission of Shoup and Wilkinson.

[Hill v. Canfield.]

3. The admission of that part of Whateley's deposition proving the value of timber at Cincinnati.

5. The answer to plaintiffs' point.

6–8. The answers to defendants' points.

*A. M. Brown* and *B. F. & A. G. Lucas*, for plaintiffs in error, cited Sheaffer v. Kreitzer, 6 Binn. 430 ; Nash v. Gilkeson, 5 S. & R. 352 ; Ingham v. Crary, 1 Pa. Rep. 389 ; Hays v. Paul, 1 P. F. Smith 140 ; Coates v. Roberts, 4 Rawle 112 ; Jacoby v. Laussatt, 6 S. & R. 300 ; Hilliard on Torts 436 ; Hurd v. Hubbell, 26 Conn. 389 ; Cook v. Loomis, Id. 483 ; McGavock v. Chamberlin, 20 Ill. 219 ; Selkirk v. Cobb, 13 Gray 313 ; Beecher v. Denniston, Id. 354 ; Forsyth v. Wells, 5 Wright 297 ; McNair v. Compton, 11 Casey 23.

*D. Barclay* and *Collier, Miller & McBride*, for defendants in error, cited Miller v. Fitch, 7 W. & S. 366 ; Taylor v. Morgan, 3 Watts 333 ; Harger v. McMains, 4 Id. 420 ; Dennis v. Barber, 6 S. & R. 420 ; Backenstoss v. Stahler's Administrator, 9 Casey 251 ; Berry v. Vantries, 12 S. & R. 89 ; McDonald v. Scaife, 1 Jones 381, and authorities there cited.

The opinion of the court was delivered, January 7th 1868, by

THOMPSON, C. J.—1. A sufficient answer to the 1st and 4th assignments of error in this case is, that the plaintiffs in error, who were defendants below, claimed to hold the property in question under an alleged purchase from the vendors of the plaintiffs below. This was the defendants' theory, and without they could make it good, their title to the property did not exist. Who were the legal owners under these vendors, was the question when the witnesses were offered. They were competent witnesses for either ; on the defendants' theory, their interest being equally balanced, they were liable in case of failure of title to either of them : Miller v. Fitch, 7 W. & S. 366. As to requiring the plaintiffs' counsel to state specifically what they intended to prove by the witness Shoup, that was entirely within the discretion of the court, and it is not assignable for error that it was not done.

2. We think the court erred in the admission of that part of Whateley's deposition which related to the price of timber in Cincinnati, in November and December of 1865. The damage by the conversion of the defendants, if they were guilty, was to be estimated in view of the time, place and circumstances of it. If Cincinnati had been the only market for such timber, on the Western waters, then testimony as to the price there, deducting expenses in running the lumber, might have been proper. But this was not the case. There was a market at Pittsburg, with its prices current, for such property, and if the plaintiff was indem-

[Hill *v.* Canfield.]

nified for the loss there, upon no principle could the law be regarded as unjust to them, or be called upon to give them more.

But it is answered that this testimony was, after having been received and read to the jury under objection by the defendants, voluntarily withdrawn by the plaintiffs. That is true; and did we see any caution to the jury against its effect, and not perceive that it must have been weighed by the jury in making up the verdict which was rendered, we might treat the evil of admission as cured by the retraction of the testimony and the caution of the court. But in the absence of aggravating circumstances, it is not easy to see how the verdict could have been made up excepting on the basis, or at least partially so, of the evidence of prices at Cincinnati.

For the reason given this was wrong; and if there were nothing else in the case, we would still be induced to think that justice would require that it should be sent back to be tried on principles more consonant with the law and practice. We therefore hold this assignment of error sustained.

2. But there are other grounds of reversal in this case; and the first is the answer of the court to the plaintiffs' 1st and only point. It was an unqualified affirmance as a matter of law, that the plaintiffs were entitled to recover; with a reference to the jury to consider the circumstances in aggravation of damages, of which we discover no evidence.

It depended on the testimony whether the plaintiffs were entitled to recover or not. Each party relied on a purchase from common vendors, the defendants being prior in time, if purchasers, at all. Which was right and which wrong, depended on the testimony of witnesses. The defendants had a case had it not been for the testimony of the plaintiffs' witnesses; and there were reasons to be considered in regard to the credibility of these witnesses inseparable from their position. Without enlarging or multiplying words, we think the withdrawal of everything but the question of the amount of damages from the jury, as the answer of the point clearly did, was error under the circumstances of the testimony.

The other portion of the point in reference to damages on the ground of outrage in the taking the property, might, as an abstract proposition, have been right; but even this is somewhat in dispute on authority. But we see no evidence of which to predicate it in this case. To submit a ground of recovery to a jury, without facts, is an error not more to be deprecated under the rules of law and practice, than it is by the instincts of justice. Whatever may be the ultimate rights of the plaintiffs, and of that we say nothing, they were not in a position to expect defendants to defer much to their claim of being purchasers—one of them was

[*Hill v. Canfield.*]

somewhat active in the sale to them, and claimed a portion of the proceeds and received a note for part of the purchase-money, to the extent of their alleged claim on the lumber, against Shoup and Wilkinson, the owners. If all this did not amount to an equitable estoppel as to their claim under a subsequent purchase, it might somewhat excuse the defendants in disregarding their claim, and running off the lumber after they had notice of it. We think the assignment of error on the point is sustained on both grounds.

3. We are of opinion also, that there was error in not affirming the defendants' 1st point. It was not an abstraction. It had reference to the facts in evidence, and if there be cases in which more than compensation may be allowed in trover, and I admit there may, they are in cases of heir-looms, family pictures and the like, taken and converted, and also where there are circumstances of fraud, violence and outrage.

It has not been an unusual thing in practice, to allow damages beyond the actual value of the goods converted, and interest; although the general rule undoubtedly, is the value of the goods and interest: 6 S. & R. 430 ; 3 Watts 333 ; 5 Wright 291. This may be exceeded, but not without the element of wilful wrong, fraud or outrage. While it must be admitted that there is a seeming generality in the point, as if looking to a denial that in trover more than the value of the property and interest can be recovered, yet it was evidently intended to refer exclusively to " *this action*" of trover, and should have been so answered, and answered affirmatively in view of its circumstances.

4. We think the court was substantially correct in its answer to the defendants' 2d point. Of what consequence was the doctrine of estoppel to the defendants, if they held under a good and valid sale ? If they were not purchasers at all, Shoup and Wilkinson could sell to whomsoever they pleased, and we see not why the plaintiffs might not purchase as well as other parties. They had asserted neither right nor title in the matter, upon which the doctrines of estoppel could apply. Whether their purchase, after what had transpired, was exactly up to the standard of honorable dealing, it is not necessary to say ; but if it were not, this alone would not be a ground of estoppel. They did not sell or pretend to sell the property, or any portion of it, to the defendants. Had they done so, a different question might have arisen. But this need not be discussed now. We have said enough to show that we do not think the 7th and 8th assignments are sustained.

5. Nor do we think there was material error in refusing to answer the defendants' 3d point. Not because so involved as to be incapable of being understood, but because if answered at all, we think it must have been answered negatively. The joining in the sale to defendants, by one of the plaintiffs, was, as we under-

[Hill *v.* Canfield.]

stand it, for the purpose of protecting an interest not in the timber as owners, but on account of some services in regard to it. It was not a sale by them of lumber, but a securing on the footing of a sale by an alleged agent of the owners, of a claim against it. If that sale was without authority, and the principals could repudiate it, the plaintiffs could hardly collect their note from the defendants, for the consideration would then have failed. In fact they placed themselves in *statu quo*, by giving up the note, and were not claiming at all as vendors, and also as vendees, of the timber. But we have said enough elsewhere, if not here, to define our views of this question. As there was no estoppel in the case under any view of the transaction as exhibited in proof, we think the refusal to answer the point does not prejudice the defendants. But for the reasons assigned the judgment must be reversed.

Judgment reversed, and *venire de novo* awarded.