## Metzger *v*. Hertz Drivurself Stations, Inc., Appellant.

Argued October 17, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Algernon R. Clapp*, and with him *C. L. Cushmore, Jr.*, of *White, Schnader, Maris & Clapp*, for appellant.

*Walter Thomas*, and with him *Walter I. Summerfield*, for appellee.

Opinion by Cunningham, J., March 3, 1934:

As the result of the retrial of an action of trespass by which Anthony J. Metzger sought to recover damages from Hertz Drivurself Stations, Inc., for a malicious prosecution a verdict was returned in his favor for $477.50; defendant's motions for judgment n. o. v. and for a new trial were overruled and it has appealed from the judgment entered upon the verdict. We are not concerned with the reasons for a second trial.

Appellant neither filed an affidavit of defense nor offered any testimony. Material facts appearing from the testimony of plaintiff and his witnesses may be thus summarized:

On the evening of Saturday, January 6, 1928, Metzger, then about thirty years of age and employed for twelve years in the registry division of the Philadelphia post-office, rented from appellant a Buick sedan under a contract, containing, inter alia, stipulations that the car should at all times remain the property of appellant and that the renter would "promptly pay when due all charges (including damages to said automobile, and/or loss or theft of tires, tools, parts or accessories) which accrue because of such rental, and [would] return the automobile in as good condition as received by the renter, ordinary wear and tear excepted." As security, he deposited with appellant $15.50. While returning with several friends the next morning, an incident occurred which he thus described: "This car, on the way back to returning the car, while coming down through the drive in Fairmount Park, the rear tire—I believe it was the right rear tire—burst—the shoe—what they call a blowout. I stopped as soon as I could and changed to the spare tire. The spare had very little air in it and we—the nearest service station would be the Hertz place itself, because we were right above the parkway. So we went down very slowly and turned the car in. I told the attendant at the Hertz place about what the trouble was, and he said nothing then, and I went in to get the change—the difference between the $15 deposit and the mileage used. While the man was in the act of giving this change the attendant came in and told him something—I didn't know what that was—and he said that we wouldn't get any change. So I wanted to know what it was, and he said that we had been running on a tire without changing, on the rim, and he wouldn't refund the money." On Monday Metzger received a bill from appellant containing three items: twenty-eight miles at eighteen cents per mile, $5.04; service fifty cents; and damages $25.50,

From the total of $31.04 the deposit of $15 was deducted and a balance of $16.04 claimed. Several days later a warrant for Metzger's arrest was issued by Magistrate F. G. Zweig; the only charge therein specified was "Violation of the Act of 1927 April 7th, 1927."

The body of the affidavit upon which this warrant issued read: "Personally appeared before me the subscriber, Ferd. G. Zweig, Magistrate Court No. 9 of the said city one Joseph Dougherty rep the Hertz Drive Yourself Co. 4142 Chestnut St., Phila., Pa., who being duly sworn according to law doth depose and say That

"One Anthony Metzger living at the address 2220 N. Hancock St. did on the 6th day of Jan. 1928 violate the Act of 103—April 7th, 1927 against the peace and dignity of the Commonwealth of Pennsylvania and further deponent saith not.

Joseph Dougherty<br>4142 Chestnut."

The act referred to is the Act of April 7, 1927, P. L. 131, and is quoted below.[1]

The constable charged with the service of the warrant arrested Metzger at his home on the evening of the day it was issued, and, upon the assurance of his mother that he would appear at the magistrate's office the next morning, released him from custody. After

---

[1] "Section 1. Be it enacted, etc., That any person who shall, with intent to defraud the owner of any motor vehicle or any person in lawful possession thereof, obtain possession of such motor vehicle, by agreeing to pay a rental for the use thereof based in whole or in part upon the distance such motor vehicle shall travel, shall, upon conviction thereof, be deemed guilty of a misdemeanor, and punished by imprisonment in the county jail for not less than thirty days or more than one year, or by a fine of not less than twenty-five ($25) dollars, or more than two hundred ($200) dollars, or both, in the discretion of the court. The refusal to pay the rental for such motor vehicle, or absconding without paying or offering to pay such rental, shall be prima facie evidence of the intent to defraud."

Metzger had waited for several hours at the magistrate's office the next morning, along with forty or fifty other persons, the hearings were postponed for one week and he was required to give bail in the sum of $300 for his appearance at the postponed hearing. He then retained Walter I. Summerfield, Esq., as his attorney and when his case, along with others, came on for hearing the following week a man, holding in his hand a number of bills headed "The Hertz Drivurself, Incorporated," appeared as the prosecuting witness against him. Mr. Summerfield testified this man was pointed out to him as the representative of appellant and when asked what the trouble was told him about the renting of the car and its return in a damaged condition. Mr. Summerfield's testimony continued: "We had an argument concerning it, and I requested him to withdraw the prosecution. He refused to do so unless the money was paid. I refused to permit Metzger to pay money while the prosecution was pending. The case was then called for hearing. At my request it was listed number one, so I could get away, and this gentleman to whom I had been speaking, testified, in effect, that Metzger had taken the car out and had returned it with the tire damaged, and had refused to pay the damage for the tire. After an argument with him before Magistrate Zweig—naturally, I argued that it was not a violation of this act—Magistrate Zweig discharged Metzger."

The constable who served the warrant testified he knew Dougherty when the latter came to the hearing, and that Dougherty stated he was representing appellant. The expenditures made by Metzger were $2.50 for procuring a bond, and a counsel fee of $75.

The eleven assignments of error need not be considered seriatim; they group themselves under two heads—those relating to the motion for judgment in

favor of appellant upon the whole record and those based upon the refusal of a new trial.

By their assignments, counsel for appellant contend: (1) That there was not sufficient competent evidence to take the case to the jury upon the question whether Dougherty, in instituting and persisting in the criminal prosecution, was appellant's agent and acted within the scope of his authority; and, (2) That in no event should a verdict in excess of the actual expenses incurred by plaintiff be permitted to stand.

Under their first proposition it is contended the learned trial judge, LAMBERTON, J., erred in admitting, over their objection, the affidavit and warrant, the testimony of Metzger relative to the bills held by the prosecuting witness at the hearing and the testimony of the constable that Dougherty said he was representing appellant.

We are not convinced that it was error to submit the issue upon this branch of the case to the jury. Granting that the alleged agency could not be shown by proof of the ex parte declarations of Dougherty, we think the other circumstances to which we have referred were sufficient to entitle the plaintiff to go to the jury. If proof to the contrary of plaintiff's contention existed, it was within the knowledge and control of appellant and was not produced. If any error was committed in admitting, or refusing to strike out, testimony, we think it was committed against plaintiff rather than appellant.

In the absence of an affidavit of defense, counsel for plaintiff offered in evidence an averment constituting a part of the seventh paragraph of the amended statement reading: "The said warrant and arrest were caused to be made by said defendant, through its agent, servant and employee, so authorized to do." The objection of counsel for appellant was sustained and while the ruling is not here involved reference

may be made to the recent case of Loper v., P. G. Publishing Company, 312 Pa. 580, 169 A. 374, in which the admissibility of such averments was considered.

In the next place it is argued that plaintiff's own testimony showed such probable cause and absence of malice that appellant's point for binding instructions should have been affirmed.

This argument is predicated upon what we think is an incorrect assumption, viz., that plaintiff, by admitting he did not pay or offer to pay appellant's bill for $16.04, conceded he had committed the criminal offense defined by the statute under which the prosecution was instituted.

Upon one page of their brief counsel say: "Even although technical malice may be inferred from want of probable cause, it cannot be said that a person acted without probable cause if he brings a proceeding under an act of assembly designed to prevent the very thing which was done in this case."

At another page this statement is made: "How can it, then, be said when plaintiff admitted he did not pay the bill and the legislature has said that such action shall be deemed prima facie evidence of a violation of the act, that there is no probable cause for charging him with the violation of the act?"

These quotations indicate a plain misconception of the legislative intent disclosed in the enactment of the statute. Undoubtedly, it was intended to define, and provide punishment for, a species of fraud—the renting of an automobile upon a mileage basis when the renter had, in fact, no intention of paying for its use.

It was just as clearly not intended to turn the court of quarter sessions into a collecting agency for the special and exclusive benefit of bailors for hire of automobiles. Moreover, there was not a shred of evidence tending to show any violation of the statute by plaintiff. Instead of declining to pay any part of

the rental at the full rate agreed upon, he actually paid it in advance. The statute contains no provisions relative to a refusal by a renter to pay damages claimed by a lessor of a car. Damages were referred to and included in the contract of hiring, but that is a very different matter. Under the uncontradicted testimony, plaintiff would not be chargeable with any damage to the car; if the rim of a wheel was damaged, that result was occasioned by the failure of appellant to have a sufficient amount of air in the spare tire. We cannot assent to the contention that plaintiff's own testimony showed probable cause and absence of malice.

Under the assignments based upon the refusal of a new trial, counsel for appellant argue that plaintiff was not entitled, under all the evidence, to have his claim for punitive damages submitted to the jury.

After charging upon the matter of compensatory damages and saying that plaintiff was "entitled to be made whole for the humiliation which he suffered, the embarrassment which he has suffered, and the damage to his reputation," and, after referring to the publicity necessarily connected with being required to answer to a criminal charge in the presence of forty or fifty people and at a magistrate's office, the trial judge continued:

"What I have spoken to you about heretofore are compensatory damages. What I have said up to now is merely the making whole for what he has lost. But we also have punitive damages. The idea of punitive damages is to punish the person who has done the wrong, so that people may be discouraged from doing it. But punitive damages can only be allowed in special cases. They are not allowable in all cases of malicious prosecution. If you conclude that these proceedings against Metzger were instituted wilfully, recklessly and maliciously, you may add to the dam-

ages that will compensate him, punitive damages to punish the defendant; that is, a sum of money which will punish the defendant and be a warning to others not to commence criminal prosecution without probable cause, or with malice.''

In their brief, counsel for appellant concede the charge ''was a correct statement of legal principles,'' but contend there was no evidence which would justify an award of punitive damages in any amount.

We have already expressed the opinion that there was not the slightest justification for charging plaintiff with a violation of the statute. There was, we think, ample evidence from which the jury could reasonably find a total want of probable cause and that the prosecution was commenced and continued' for the purpose of intimidating plaintiff into paying money he was under no legal obligation to pay and with such a wanton and reckless disregard of his rights as to amount to oppression. Under all the circumstances it cannot be said the verdict was excessive.

The able presentation of their case by counsel for appellant has not persuaded us that any of the assignments should be sustained.

Judgment affirmed.