Stone *v.* C. I. T. Corporation, Appellant.

Argued March 16, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*F. Brewster Wickersham,* of *Metzger & Wickersham,* for appellant.

*Thomas D. Caldwell,* of *Caldwell, Fox & Stoner,* with him *Samuel Levin,* for appellee.

OPINION BY BALDRIGE, J., April 27, 1936:

This action in trespass arose from a wrongful seizure of plaintiff's car by defendant.

On November 7, 1931, the plaintiff, a vacuum cleaner salesman, purchased an automobile from Dohler Brothers, of Pittsburgh, for the sum of $995, under a dual contract of bailment and sale: Road Roller Co. v. Schlimme, 220 Pa. 413, 416, 69 A. 867. He received a credit of $465 for his old car and the balance of the purchase money was financed by the defendant, which charged him $94 for this service. There remained a balance of $624, which was to be paid in sixteen equal monthly installments of $39. The title to the automobile was to remain in the hands of defendant until the payments thereon were completed.

The plaintiff made thirteen payments, the last of which fell due on December 27, 1932. He moved to Reading, Pennsylvania, in February, 1933, and notified the defendant of his new address. A few days later the manager of defendant's Reading office called at his home, and, after first removing the distributor from plaintiff's automobile which was standing in front of the house, demanded payment of the amount due, or, in lieu thereof, possession of the car. Plaintiff was not able to comply with the request for payment, and the car was removed to a local garage and a receipt therefor given to defendant's agent. A short time thereafter, the Reading manager called on plaintiff and suggested that the car be refinanced with the Reading Finance Company. Plaintiff agreed to this suggestion, and arrangements were made with that company to pay defendant in full. Defendant's manager communicated with the Pittsburgh office and was informed that the plaintiff owed $112. To this was added $8 for services of the manager in repossessing the car. The Reading

74

Finance Company gave defendant the sum of $120 and received the certificate of title, cleared through the Department of Revenue, upon which the Reading Finance Company recorded its encumbrance, and possession of the car was then given to plaintiff.

On April 15, 1933, plaintiff moved to Harrisburg and engaged in his work of soliciting orders, which required travelling by automobile. On April 25, 1933, while the car was parked in front of his home, defendant's Harrisburg agent, without plaintiff's knowledge, drove it away. The plaintiff finally located his car, and, in an interview with the defendant's agent who had committed the unwarranted act, the plaintiff for the first time was told that the defendant had made a mistake in its calculations of the balance due, that there was still owing by the plaintiff the sum of $44, and the agent refused to surrender the car. Plaintiff then prosecuted the agent for larceny, and at the hearing the plaintiff was told that he would have to pay $44 to obtain the car. This he declined to do and again demanded possession of the car. About two weeks later, the car was returned to plaintiff without any explanation. This suit was brought, and a verdict was found in favor of the plaintiff, itemized as follows: actual damages $260, humiliation $500, punitive damages $1,250.

The defendant's first position is that there was no accord and satisfaction of its debt, as, owing to its error in bookkeeping, the amount paid was less than was actually due, and, therefore, it had a right to take the car, as the lease provided that if any rent became due and unpaid, it could, without previous notice or demand and without legal process, take possession of the car.

Assuming for the sake of argument only that $44 remained due, and that there was not a technical accord and satisfaction, the evidence convincingly estab-

lishes that it was understood and agreed by the parties that the defendant surrendered all its rights in and to the car by giving the Reading Finance Company a clear and unencumbered title. That it could do without completely discharging plaintiff of his obligation, if any amount was actually due. In the face of the facts before us, the defendant cannot, in good faith, say now that the title is assigned and represented as clear of encumbrances is subject to the bailment lease with the right to seize the car. When the consideration for the transfer of title to the car was paid and accepted, the defendant's rights under the lease ended, notwithstanding the alleged mistake. In Smith v. J. I. Case Machine Co., 50 Pa. Superior Ct. 92, 99, we held that a bailment, even for a stipulated period, may be dissolved by mutual agreement at any time. "The general rule is, that a mistake will not be relieved against if it is the result of the party's own negligence. ......
Especially is this the case where the application for relief has been postponed until the contract has been duly performed by both parties, and the party seeking relief does not offer or is unable to restore the other party to this original position": Youngstown Electric Light Co. v. Poor District, 21 Pa. Superior Ct. 95, 99. See, also Price v. Beach, 20 Pa. Superior Ct. 291; Portland Ice Co. v. Connor, 24 Pa. Superior Ct. 493; Felin v. Futcher, 51 Pa. Superior Ct. 233, 239; 13 C. J. 611, §656.

There was not the slightest bit of evidence presented which tended to prove an offer to restore the plaintiff to his original position. If there was money honestly due the defendant by the plaintiff, the defendant had a remedy, but not that to which it resorted. The learned court below instructed the jury that if they believed a mistake had been made, and that $44 was due the defendant, they were to take that question into consideration in determining the amount of their verdict.

In view of what we have heretofore said, little further discussion is necessary in answer to the second position relied upon by the defendant, viz., that it is not estopped from asserting its rights under the lease.

Estoppels rest largely on the facts and circumstances of the particular case. They cannot be subjected to fixed and settled rules of universal application. Generally, one with a full knowledge of the true facts, or with suitable means of ascertaining them, is held to his representations or to the position he assumes, if inequitable consequences result to another. The conduct of the defendant, to which we have referred, including the failure for three months to give notice, tended to make the plaintiff believe that it had no further rights to the car. "Having induced action by another on a belief in a given state of facts, it is unjust to permit him who induced the action to deny the facts and strip the action of the protection which they would have afforded": Sensinger v. Boyer, 153 Pa. 628, 632, 26 A. 222. In Herman on Equitable Estoppel, §944, it is said: "Rights can be lost or forfeited only by such conduct as would make it fraudulent and against conscience to assert them. Therefore, if one acts in such manner intentionally as to make another believe he has no rights or has abandoned them, and the other, trusting to that belief, does an act which he would not have done, the fraudulent party will be estopped from asserting his right."

We find no difficulty in concluding that defendant was estopped by its conduct from claiming any of the rights afforded it by the bailment lease; nor do we find any reason to deny the awarding of damages to plaintiff. His right of recovery is not affected by any outstanding paramount title that may be in the Reading Finance Company: Restatement of the Law on Torts, §§222, 248.

The real question for consideration is whether the

plaintiff is entitled to recover for the various elements of damages the jury awarded.

We will consider, first, the allowance of $260 for actual damages. The testimony shows that when the plaintiff started to work in Harrisburg his gross earnings for the first week were $78.27, and until the middle of the second week, when his car was taken, he had earned $38.97. The following week he had no use of the car and had no earnings. He received his car the end of the third week, during which he earned but $17. The fourth week he earned $58.82 and the fifth week, $55.91. The following week his earnings increased to $148.58. As the learned court below pointed out, the jury evidently took a round figure of $80 as representing his average weekly earnings, which in five weeks would have amounted to $400. His total earnings in that period were $170.70; his loss of earnings was therefore $229.30, to which the jury added $30, making a total loss of $259.30, $.70 less than allowed.

Loss of earnings resulting from an interruption of business due to a wrongful act of another affords a proper element of damages: 17 C. J. pp. 795, 797, §§117, 122.

The defendant insists that it was the plaintiff's duty to exercise reasonable diligence in minimizing his damages: 8 R. C. L. p. 442, §14; 42 C. J. p. 1290, §1166; that his actual damage should have been determined on the basis of the cost of hiring another car: Bauer v. Armour & Co., 84 Pa. Superior Ct. 174. The plaintiff may, undoubtedly, offer such evidence for the purpose of determining the extent of the loss, but he was not required to do so, nor would he necessarily be limited to that element of damage. The burden of minimizing the damages was on the defendant: Kirk v. Hartman & Co., 63 Pa. 97; Emery et al. v. Steckel, 126 Pa. 171, 17 A. 601; Heyer v. Piano Co., 6 Pa. Superior Ct. 504. They must not be based upon mere guesswork or unwarranted in-

ferences; there must be facts and circumstances and data to justify awarding them. The law requires that damages be assessed, not merely upon conjecture, nor, on the other hand, with absolute certainty, but with reasonable certainty. In Com. Trust Co. v. Hachmeister Lind Co. et al., 320 Pa. 233, 239, 181 A. 787, Mr. Justice LINN cited with approval the statement in the case of Eastman Co. v. Southern Photo Co., 237 U. S. 359, 379, which had particular application to that case as well as this one: "...... 'future profits could be shown by past experience ...... Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.'"

Although the pecuniary measurement of the damages may be uncertain or extremely difficult of ascertainment, a plaintiff is not denied the right of recovery. This rule is held to be particularly true where personal injury results from a tort, and we think it has application in this type of a case.

Considering the evidence of plaintiff's earnings prior and subsequent to this unlawful seizure, we are of the opinion that the proof was sufficient to establish the finding that his actual damages amounted to $260.

The objection to the allowance of damages for humiliation is, in our judgment, well founded. We have been unable to find any case where mental suffering, or humiliation which is a form of mental anguish (30 C. J. p. 476), unaccompanied by injury to the person, has been allowed as an element of damages. "Mental suffering has not generally been recognized as an element of damages for which compensation can be allowed unless it is directly connected with a physical injury or is the direct and natural result of a wanton and intentional wrong:" Linn v. Duquesne Boro., 204 Pa. 551,

553, 54 A. 341. In Studebaker et ux. v. Pgh. Rwys. Co., 260 Pa. 79, 82, 103 A. 532, the court said: "In an action for negligence there can be no recovery for mental suffering except it be founded upon physical injury."

In Rockwell v. Eldred Boro., 7 Pa. Superior Ct. 95, which was a personal disfigurement case, the court said that in actions for wrongfully ejecting a passenger from a railroad car, malicious prosecution, illegal arrest or false imprisonment, the plaintiff is entitled to compensation for attending humiliation; and where, as a result of defendant's tort, the plaintiff sustains a personal mutilation which may make him an object of curiosity or ridicule, he may recover compensation for mortification arising therefrom. In this category are the following cases: Perry v. Passenger Rwy., 153 Pa. 236, 25 A. 772 (forcible ejectment from a street car); Metzger v. Hertz Drivurself Stations, Inc., 112 Pa. Superior Ct. 365, 171 A. 118 (malicious prosecution); Duggan v. B. & O. R. R. Co., 159 Pa. 248, 28 A. 186 (false imprisonment). See, also, Sedgwick on Damages (9th ed.), vol. 1, §74.

This element of damages cannot stand.

No serious difficulty is presented in sustaining the element or the amount of punitive damages. The defendant, instead of resorting to an orderly and legal procedure to enforce its alleged claim, chose, in a despotic way, to oppress and harass this plaintiff. It must bear the consequences of its invasion of the plaintiff's rights. Abundant authority may be found to support the awarding of exemplary damages for a trespass, consisting of the wrongful taking and detention of personal property. See McDonald v. Scaife, 11 Pa. 381; Wiley v. McGrath, 194 Pa. 498, 45 A. 331; Armstrong & Latta v. Phila. 249 Pa. 39, 94 A. 455; Ladner v. Forman et al., 107 Pa. Superior Ct. 245, 163 A. 359; 17 C. J. p. 980, §276.

The judgment, subject to the elimination of damages for humiliation, is affirmed.