## Rumfola v. Community Consumers Discount Company

Carl A. Belin and Chaplin & Arnold, for plaintiff.
Robert V. Maine and Frank G. Smith, for defendant.

PENTZ, P. J., November 22, 1954.—At the end of the trial of this case the jury brought in a verdict in favor of plaintiff on May 11, 1954, in the sum of $3,025, with interest from October 14, 1952, to May 11, 1954, in the sum of $257.62, or a total of $3,282.62.

Defendant filed motions for judgment n. o. v. and for new trial, setting forth the reasons for judgment n. o. v. as follows:

1. There was no proof that the property involved belonged to plaintiff.

2. There is no proof that defendant converted said property.

3. The court erred in refusing to grant defendant's motion for compulsory nonsuit.

4. The court erred in submitting the case to the jury, there being no dispute as to material facts with reference to the acts of defendant.

5. The court erred in not ruling as a matter of fact that plaintiff had no title or interest in the vehicles involved.

6. The court erred in not ruling as a matter of law that defendant was not guilty of converting the vehicles involved.

7. The court erred as a matter of law in permitting oral testimony to vary the terms of written documents,

to wit, the chattel mortgage between defendant and A. G. Bartholomew, Jr., and the bill of sale between A. G. Bartholomew, Jr., and James Marino.

On the motion for new trial, the principal reasons are:

1. The court erred in permitting the jury to assess damages against defendant for more than the equity of plaintiff in the motor vehicles involved.

2. The same objection is raised in the seventh reason for motion for judgment n. o. v.

3. The objection to the competency and qualification of witnesses to express opinions of the value involved in the controversy.

4. The court erred in its instruction to the jury in regard to the measure of damages and other matters, as set forth in the exceptions taken by counsel for defendant in the trial.

5. Lastly, the verdict is excessive and unwarranted by the evidence in the record.

In considering a motion for judgment n. o. v. it is needless to refer to authorities for the principle that the party in whose favor a verdict is rendered by a jury must be given the benefit of every fact and inferences of fact pertinent to the issue, which may reasonably be deduced from the whole record. With this principle in mind, the facts and the reasonable inferences therefrom, favorable to the plaintiff in this case, we find as follows:

Plaintiff, Tony Rumfola, has been employed by A. G. Bartholomew, Jr., in a cleaning and pressing business, operated by Bartholomew. Bartholomew decided to go out of business, and on September 3, 1952, plaintiff, by a verbal agreement with A. G. Batholomew, Jr., took over the cleaning and pressing business. Among the facilities of the business were the three trucks, which are the subject matter of this suit, namely, a Dodge, a Willys and a Ford. These three

trucks involved, together with A. G. Bartholomew, Junior's, automobile, were pledged to defendant, for a loan. The titles to the four vehicles were in the possession of defendant, together with his chattel mortgage, all to secure the obligation of A. G. Bartholomew, Jr., to defendant company.

On September 12, 1952, defendant's agent, Clarence Pearson, investigating delinquent accounts, went to the Bartholomew cleaning plant, met plaintiff, and plaintiff told Pearson of the arrangement or agreement between himself and Bartholomew, Jr. The two then went to the office of defendant, and plaintiff told the secretary-treasurer and general manager, John M. Troxell, of the arrangement or agreement between himself and Bartholomew, Jr. Troxell called Bartholomew, Jr., by phone and verified the agreement.

Plaintiff at this time was told of the amount of arrearages on the loan to Bartholomew, the amount of which, however, plaintiff was unable to recall at the time of the trial. Plaintiff, however, did pay defendant the sum of $100, on account of such arrearages and stated that he knew Batholomew, Jr., had been obligated to pay the sum of $80 per month toward liquidating the loan.

A day or two later plaintiff consulted Dan P. Arnold, a member of the bar of Clearfield County, concerning the transaction with Bartholomew, Jr., and the facts concerning his visit to the office of defendant on September 12th. Plaintiff, accompanied by his attorney, then visited Troxell in his office, at which interview Mr. Arnold advised Troxell, that until plaintiff had some evidence of the transaction in writing he had advised plaintiff to pay no more money. Troxell agreed that this was the correct procedure, and then upon Mr. Arnold's suggestion that he draw up the bill of sale, or whatever document Troxell wanted, Troxell said that he would prepare what he wanted, and send it

over to Arnold to have Bartholomew, Jr., execute the desirable document. Troxell designated this as a power of attorney, and further advised Arnold that to facilitate transfer of the title, a straw man should be placed in the power of attorney. Troxell had also advised plaintiff, and Mr. Arnold at a later date, that the certificates of title for the three vehicles in the possession of defendant should not be transferred to plaintiff until after October in order to save license fees on the three trucks.

Troxell then prepared the "Power of Attorney", plaintiff's exhibits 7, 8 and 9, filling in the forms with everything but the name of the so-called "attorney". The forms, as shown by the exhibits, are in fact a bill of sale to James Marino, and also a power of attorney to the vendee, to transfer, or otherwise dispose of the certificates of title, for and on behalf of A. G. Bartholomew, Jr. Troxell filled in the form with all the necessary requirements, except the name of the straw man, and sent the three forms, exhibits 7, 8 and 9, to Mr. Arnold, with a note attached, plaintiff's exhibit 6, signed in ink by John Troxell. Exhibit 6 advised that these powers of attorney must be signed before a notary public to be accepted by the Bureau of Motor Vehicles, and someone's name must be filled in on them, and "we would suggest that you name someone locally". Mr. Arnold received these exhibits, inserted the name of James Marino, a business man in the Borough of Clearfield, whose consent thereto had been obtained by plaintiff. These exhibits were then forwarded to A. G. Bartholomew, Jr., signed by him and executed before a notary public on September 25, 1952, and returned to Mr. Arnold on September 26, 1952. Mr. Arnold then advised Troxell of the receipt of these powers of attorney and also advised plaintiff. At this time Troxell advised Mr. Arnold that the certificates of title should be held until after October in order to

make a saving of the truck license fees. Troxell also notified plaintiff who came to Troxell's office and paid an additional sum of $120 on September 27th.

The transaction remained in this status until October 12th, or shortly before that date, when plaintiff paid in cash the sum of $80 to defendant. Plaintiff testified that the two previous payments had brought the arrearages to date, and the $80 payment was on the monthly payment and stated that he had been advised by defendant, through either Troxell or Pearson, that he would be notified when the next payment was to be made.

On October 14th, the mother of A. G. Bartholomew, Jr., accompanied by a Mrs. Smith, arrived at the office of defendant, and exhibited a power of attorney from A. G. Bartholomew, Jr., to his mother, to act for him in the matter (this power of attorney was not put in the record, and was referred to as giving Mrs. Bartholomew full power to act on behalf of A. G. Bartholomew, Jr.). Mrs. Smith was to pay the balance of the loan of A. G. Batholomew, Jr., and take the certificates of title to the trucks. Plaintiff learned of this, communicated with Mr. Arnold, and the transfer of the certificates of title to Mrs. Smith was vigorously protested. However, the money was received by defendant, the certificates of title were delivered to Mrs. Smith and the truck taken away. Defendant, by Mr. Pearson, pointed out the trucks to the agents of Mrs. Smith, advised plaintiff's employes to remove everything from the trucks, and obtained a mechanic to get the trucks started.

Plaintiff, testifying that he was unable to continue the cleaning and pressing business without the trucks, had to give up the business.

Suit was then filed for the value of the trucks, the loss of profits of the business plaintiff might have made and moneys expended by plaintiff in payment of some

of the indebtedness of A. G. Bartholomew, Jr., the payment of the indebtedness being a part of the verbal agreement made with A. G. Bartholomew, Jr., and plaintiff in September.

Defendant in its motion for judgment n. o. v., pointing out that the facts concerning the pledge of the three trucks by Bartholomew to defendant company, as security for a loan, and the following transactions as hereinbefore detailed, are not in dispute, argues that such facts do not give to plaintiff any right or equity in the trucks; that defendant, as pledgee, was duty bound to deliver the certificates of title to the pledgor, or upon his order, upon payment of the loan, and cites for that principle Bangor Silk Knitting Co. v. Wise et al., 277 Pa. 415, standing on the principle that a pledgee is estopped from denying the title of the pledgor, either by claiming title in himself, or by setting up title in a third person, and the pledgee is obliged to return to the pledgor the pledged property whenever the obligation it secures has been discharged.

Defendant also urges that the transaction between plaintiff and Bartholomew, Jr., was verbal; that the transaction between plaintiff and defendant was verbal, and that the bills of sale, exhibits 7, 8 and 9, although in writing, were bills of sale to James Marino, and not plaintiff, and that plaintiff claiming he, and not Marino, is the purchaser of the right of Bartholomew, Jr., constitutes alteration of a written instrument by parol.

The relationship between defendant and A. G. Bartholomew, Jr., prior to September 3, 1952, was a pledge. What is a pledge is defined in 41 Am. Jur., Pledge and Collateral Security, sec. 2:

"A pledge or pawn is a bailment of personal property as a security for some debt or engagement, the property being redeemable on specified terms, and subject to sale in the event of default."

A chattel mortgage was introduced in evidence by plaintiff as his exhibit 11. However, defendant throughout the course of the trial, and in the argument, stands on its position as pledgee, and is bound by the rights, duties and obligations between a pledgor and pledgee.

Although the record does not indicate, there was no denial by defendant that A. G. Bartholomew, Jr., was paying the obligation in monthly installments, and the amount due defendant was in excess of the amount set up in the chattel mortgage, exhibit 11, namely, $804; it is a reasonable inference that the chattel mortgage was collateral security, in addition to the certificates of title, for the loan, the amount of which was stated by Troxell to be $1,180.

Plaintiff also contends the relationship between A. G. Bartholomew, Jr., and defendant, was a pledge, but plaintiff purchased, in a legal effect, the equity of redemption from A. G. Bartholomew, Jr., the pledgor, and thereby succeeded to all of the rights of A. G. Bartholomew, Jr., in the pledge of these three trucks, and such succession to these rights by the assignment from A. G. Bartholomew, Jr., to plaintiff, was recognized and accepted by defendant.

A pledgor may sell his equity in the property pledged:

"A bailor may sell the subject-matter of the bailment, subject to the special property in the bailee; if, by agreement, the subject-matter is to remain in the pledgor's possession, it binds all claiming under him, except purchasers without notice: Collins's App., 107 Pa. 590, 605." O. H. and C. K. Eagle, Inc., v. Kunkle, 278 Pa. 190, 192.

And on page 195:

"By Sections 23 and 35 of the Act of June 16, 1836, P. L. 761, 765, 767, it is expressly provided that pledgor's right of redemption can be levied on and

sold; such sale carries the right to the property subject to the interest of the pledgee, who may maintain trover or replevin where the property is wrongfully taken from his possession under execution."

With this right of the pledgor or bailor to sell and dispose of his equity of redemption defendant cites Clowes v. Hughes Brothers, 3 Pa. Superior Ct. 561, and contends this case governs the case at bar, rather than Bangor Silk Knitting v. Wise, supra. In Clowes v. Hughes Brothers, supra, Hughes Brothers, warehousemen, accepted for storage some household goods from a Mrs. Bourne. While the goods were in storage in the possession of Hughes Brothers, they were notified that Mrs. Clowes claimed to have purchased these goods from Mrs. Bourne. Upon demand of Mrs. Bourne, Hughes Brothers delivered the goods to her over the protest of Mrs. Clowes. In a suit by Mrs. Clowes for the value of the goods against Hughes Brothers, the Superior Court said on page 565:

"The warehouseman elected to settle the controversy between these disputants, and decide whether the contract exhibited called a bill of sale, was a bailment or an absolute sale. He volunteered too much, as he was fully protected under the statutes regulating his business. Hughes Brothers were not guarantors of the title to the goods. While Mrs. Bourne held the receipt given by them when the goods were stored, they knew the claim of Mrs. Clowes was, that she was absolute owner of the property which had been stored with them in fraud of her right to them: Insurance Co. vs. Kiger, 13 Otto (U.S.) 352.

"Under the facts as made by Hughes Brothers, it was not necessary to make tender of the charges, and demand the property before bringing suit: Alden v. Pearson, 3 Gray, 342; Springer v. Groom, 21 W. N. C. 242.

"They waived all this by assuming to determine the title in Mrs. Bourne and delivering the property. Hughes Brothers were not the agents of Mrs. Bourne, but the bailees of the property for the rightful owner, and could properly have refused to deliver to either without being made secure in so acting; or refer the disputants to the courts, where the warehousemen would have been protected as to their charges and liability. If the defendants were not entitled to the benefits of the law regulating the business of warehousemen they were admittedly bailees with notice of the plaintiff's claim of ownership, and whether her claim as absolute owner was well founded or not, it is conceded that she held a bill of sale for the property as security for moneys advanced to Mrs. Bourne. This under the law entitled her to the possession of the property as against all but bona fide claimants in possession, and was sufficient to enable her to maintain the action: Boyle v. Rankin, 22 Pa. 168; Steelworks v. Hallgarten, 15 W. N. C. 47; and the defendants having disposed of the goods in disregard of her claim entitled the plaintiff to bring suit without notice or demand: Croft v. Jennings, 173 Pa. 216."

It must be the conclusion that the rule of law laid down in Clowes v. Hughes Brothers, supra, controls the situation in the case at bar and is a much stronger case for plaintiff, Tony Rumfola, than it was for plaintiff in Clowes v. Hughes Brothers, supra.

In Bangor Silk Knitting Co. v. Wise, supra, the controversy was between the pledgor and the pledgee, for the securities placed with the pledgee and appropriated by the pledgee to himself. In the case at bar, as in Clowes v. Hughes Brothers, supra, the pledgor had sold and transferred, to a third party, the equity of redemption, of which sale the pledgee had notice and, in the case at bar, the additional facts were sufficient to justify the jury in finding that the pledgee, defend-

ant here, had accepted the assignee of the pledgor in place, instead of the original pledgor, and had accepted from the assignee of the pledgor not only the arrearages accrued on the loan of the pledgor, but also one payment, in accordance with the payment schedule between the original pledgor and defendant company.

Defendant urges that The Vehicle Code of May 1, 1929, P. L. 905, provides in section 102 thereof (75 PS §2) that in the event a vehicle is the subject of a chattel mortgage then such mortgagor shall be deemed the owner for the purpose of this act.

Since defendant, as well as plaintiff, regarded the pledge of the three vehicles as security for the loan, and the chattel mortgage only as additional security, the amount set forth in the chattel mortgage being less than the actual debt, the section quoted of The Vehicle Code does not apply. Section 203($b$) of The Vehicle Code (75 PS §33($b$)) also relied upon by defendant, does not place any greater burden on defendant pledgee than already existed by law, nor does section 203 of the same act (75 PS §33) do more than require the mortgagee, or a pledgee, to be subject to a penalty of a fine and alternatively imprisonment for failure, upon payment of the mortgage, to satisfy encumbrances noted on the certificates of title and deliver them to the pledgor.

However, in the case at bar, as found by the jury's verdict, defendant, as pledgee, or mortgagee under the chattel mortgage, if that controlled, had accepted plaintiff, as assignee of the pledgor, and would have a defense against A. G. Bartholomew, Jr., or his second assignee, Mrs. Smith, had she paid the loan, and not received the certificates of title to these three trucks, and undertook to invoke the penalties of this act of assembly.

The Vehicle Code, and the provisions concerning the entry of encumbrances upon the face of a certificate

of title, and the holding of these certificates of title by the lender as security, has been created by the legislature to facilitate the lending of money upon, or the financing of the purchase of motor vehicles, to avoid the ordinary rule of bailments or pledges, which require the property pledged or bailed for security, to be delivered to the bailee or pledgee, and actually in possession of such pledge. It has always been a requirement, that if the property pledged as security is capable of manual delivery it should be so made. But where such manual taking of the property pledged is impracticable, then a symbolical delivery may be made by giving a writing which sufficiently describes the property pledged to identify it: First National Bank & Trust Co. v. Jaffe, 114 Pa. Superior Ct. 315. The Vehicle Code, as stated above in respect to the holding of certificates of title, with a notation of encumbrances thereon, is in legal effect a symbolical delivery of the motor vehicles pledged to secure a loan, and the requirement that no motor vehicle can be transferred without delivery of the certificate of title, issued by the Bureau of Motor Vehicles, gives notice to any purchaser, of any encumbrance upon the particular motor vehicle, thus affording protection to lenders of money as well as purchasers of the vehicles.

The fact that defendant retained these certificates of title in its possession, after September 26th, when the bills of sale from A. G. Bartholomew, Jr., to plaintiff's agent, or straw man, James Marino, were not actually turned over to defendant and the certificates of title transferred to plaintiff, does not interfere with the requirement of The Vehicle Code that such certificates of title, upon a sale or transfer, must be filed within 10' days after such sale, particularly, since the documents were retained by plaintiff's attorney, and defendant for transfer after October, in order to effect a saving in the truck license fee, and this, at the instance and recommendation of defendant.

This was the situation until October 14th, when Mrs. Bartholomew, acting under a power of attorney from her son, A. G. Bartholomew, Jr., appeared at the office of defendant, directing that the certificates of title be turned over to Mrs. Smith, who was paying off the balance of the loan. Upon this demand of Mrs. Bartholomew, defendant was confronted with the choice of recognizing its previous commitment to defendant and accepting the payment of the loan at the rate of $80 per month, or to have its loan paid in full at that date. (Mrs. Smith refused to pay the loan unless she received the certificates of title.) Defendant took the latter alternative, received the money and delivered the certificates of title, thereupon immediately losing its right or claim in and to the certificates of title, which carried with it the right of ownership of the three vehicles.

Defendant contends that it did no more than point out the three vehicles to Mrs. Smith or her agents, the location and to assist in the removal thereof. This, however, is immaterial one way or the other, since the delivery of the certificates of title, carries with it the right to obtain ownership and title to the trucks, which Mrs. Smith did.

In accordance with the rule of law as laid down in Clowes v. Hughes Brothers, supra, and in Stone v. C. I. T. Corp., 122 Pa. Superior Ct. 71, as well as in Bernstein v. Hineman, 86 Pa. Superior Ct. 198, defendant then became liable to the plaintiff for the value of the goods, because of a conversion of the property, namely, the three trucks, depriving plaintiff of his right to obtain ownership, as well as possession of the trucks, under the agreement made in September 1952.

For these reasons the motion for judgment n. o. v. must be overruled.

In support of its motion for new trial, defendant urges the same reasons as advanced on the motion for judgment n. o. v., and in addition, excepts to the admission of the testimony of plaintiff giving his estimate or value of the three trucks, and the evidence of Robert Dotts, concerning the value. Robert Dotts is a member of the firm of Dotts Motor Agency, buying and selling motor vehicles, and by reason of such, had valued motor vehicles for purchase and sale, had seen and knew the three trucks. This was properly admitted in evidence and submitted to the jury: Czerwinski v. National-Ben Franklin Fire Ins. Co. of Pittsburgh et al., 138 Pa. Superior Ct. 84, 87.

"The plaintiff himself testified to the articles alleged to have been destroyed by the fire and the prices alleged to have been paid for them, the time when they were said to have been purchased, and the use made of the several articles and their alleged condition immediately before the fire. The said witnesses were merchants who had been in business for a number of years as managers of stores, clerks and otherwise; and handled the particular goods about which they were to testify; and after having heard the testimony of the plaintiff, with the relation to the original cost, the time of purchase, the use to which they were put, the condition immediately before the fire and their condition immediately after the fire, were permitted to testify and give their opinions as to the values of the goods both before and after the fire.

"In Wigmore on Evidence, Sec. 716, Note 2, it is said: 'An owner is doubtless qualified to state the cost price of articles of personal property, and from that, with information as to age and wear, the jury may estimate value.'

"Henry on Trial Evidence, Sec. 346, says: 'One having special knowledge of the value of goods, machinery or other personal property, may be permitted

to testify thereto though he may not be technically an expert. His familiarity with the particular articles, or with the trade or business in which they were manufactured, sold or used, enables him to estimate the value in a way which others could not. It is immaterial that he never saw the particular goods in question.'

"The court below relied upon the case of Mish v. Wood, 34 Pa. 451, which fully justified the admission of the evidence."

A pledgee found to have converted the pledged property is not entitled to credit for the amount or balance of the loan in an action to recover the value of the property, by the one entitled thereto. In this instance the amount owing defendant had been paid defendant in full, and defendant would not be entitled to recover its debt twice, but must pay the full penalty for its conversion of the property, which plaintiff was entitled to possess, and eventually own, had defendant carried out its agreement with plaintiff.

The argument of defendant, that the transaction was a verbal alteration of a written agreement, would not affect the bills of sale, exhibits 7, 8 and 9, to James Marino, as James Marino is inserted as a straw man or agent for plaintiff, at the instance of defendant, and certainly recognition of that situation, created by defendant would not be an alteration of the written instruments, exhibits 7, 8 and 9: Penn Discount Corp. v. Sharp et al., 125 Pa. Superior Ct. 171.

There could be no alteration of the terms of the chattel mortgage, as there was no evidence that plaintiff was to be substituted as mortgagor therein, and no claim whatsoever that the chattel mortgage governed this transaction.

*Order*

Now, November 22, 1954, motion for judgment n. o. v. is overruled.

Motion for new trial is overruled, and the prothonotary is directed to enter judgment in favor of Tony Rumfola, plaintiff, and against Community Consumers Discount Company of Clearfield, defendant, in the sum of $3,282.62.