**BABICH & STOTLER, INC., a corporation, Plaintiff,**

v.

**JOHN DEERE INDUSTRIAL EQUIPMENT CO., a corporation, Defendant.**

Civ. A. No. 70–558.

United States District Court, W. D. Pennsylvania.

March 28, 1972.

Henry A. Martin, Anto, Myshin & Martin, Monessen, Pa., for plaintiff.

John H. Morgan, Pittsburgh, Pa., for defendant.

## OPINION

McCUNE, District Judge.

We are considering a motion by plaintiff for a new trial in the above captioned action following trial and a verdict for plaintiff in the sum of $27,500.00 plus interest from November 22, 1969, at the rate of 6% per annum.

Plaintiff sought punitive and consequential damages as well as the value of a so-called front end loader, a piece of machinery manufactured by John Deere and repossessed by John Deere Industrial Equipment Co., a corporation, the defendant. The complaint had alleged that defendant corporation had unlawfully converted to its use the machinery which had been purchased by plaintiff corporation from a John Deere dealer, Reed Supply and Equipment Company, of Fairchance, Pennsylvania.

We refused to submit the issue of punitive and consequential damages to the jury and this action is charged to be error and the main error in the trial.

It was alleged during the trial in the plaintiff's case that plaintiff had purchased the front end loader from the named authorized dealer in May of 1969

at a cost of $30,250.00 (including traded equipment) and had immediately leased it to a firm called Westmoreland Paving Company for one year at a rental of $1,000.00 per month. While the lease was in progress the defendant was alleged to have repossessed the machine on November 22, 1969, and continued in possession of it until the day of trial.

The dealer in question was in default to John Deere Industrial Equipment Company and the Equipment Company was seeking to locate and repossess equipment which should have been but was not present on the dealer's premises. Representatives of the Equipment Company located the machinery in question on the premises of Westinghouse Electric Company in Westmoreland County. They repossessed the machinery by going to the premises of Westinghouse and driving it away. Before doing so representatives of the Equipment Company made inquiry to determine whether anyone had actually purchased the machinery because their dealer could have passed title.

Part of their investigation consisted of calling Mr. Babich, principal owner and manager of plaintiff corporation, who admittedly told them he was leasing the equipment (p. 49 of the record). They also had seen a written lease between the dealer and Westmoreland Paving Company bearing a signature which purported to be that of Nick Babich, described on the lease as President of Westmoreland Paving Company. Mr. Babich repudiated the signature and testified that he had repudiated it in a conversation with a representative of Deere and had asserted his ownership in that conversation on November 18th or 19th of 1969. The machine was repossessed on November 22, 1969, but a local attorney was immediately named by the defendant and defendant asked that he be contacted by Mr. Babich. Instead of talking with the attorney Mr. Babich loaded a shot gun and aimlessly looked for the Deere people with the stated intent of shooting them. The machinery was parked not far away at the yard of another dealer, Petrie Equipment Company, and Mr. Babich found it there but took no steps to explain his ownership to the local attorney until December 1969 and then made little effort to explain his confused records so that title to the machinery could be ascertained.

The lease from Reed Supply to Westmoreland Paving Company was never explained. It was apparently clear that Babich was not an officer of Westmoreland but Reed could not recall whether he or someone else had prepared the lease and no explanation appeared for the name "Babich" on the lease.

The general manager of Westmoreland Paving testified that he leased the machine from Babich for "X" number of months and said he would keep it for approximately a year but he admitted he had not paid rental for November of 1969 and the President of the company who was Vice President at the time of the oral lease testified that there was no definite term to the lease (p. 98) and in November Westmoreland didn't need the machine (p. 107).

Representatives of the Equipment Company had not only called Babich in an effort to determine ownership of the machinery but had sent representatives to see Mr. Babich to try to determine title immediately after the repossession. They received little or no cooperation. It was apparent in the plaintiff's case that defendant had tried to determine the true facts before they resorted to repossession.

Although Mr. Babich testified that he had actually purchased the machinery on May 13, 1969, and had immediately leased it to Westmoreland Paving Company for one year at $1,000.00 per month and had delivered it to a site owned or operated by Westmoreland Paving Company in May of 1969, the records of plaintiff corporation were confusing and it might have been found that the equipment had actually been leased by the dealer to Westmoreland Paving Company. The jury found that plaintiff corporation owned the machin-

ery, however, and awarded plaintiff its value.

 However, it would have been error to have submitted to the jury the claim for punitive damages. It must be shown that a defendant acted in a fraudulent or outrageous manner with the purpose of harassing or oppressing a plaintiff before punitive damages may be awarded, see Pittsburgh Outdoor Advertising Co. v. Virginia Manor Apartments, Inc., 436 Pa. 350, 260 A.2d 801 (1970); Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355 (1963); Restatement of Torts, Second, § 908.

The record in the plaintiff's case was clear that Deere acted after deliberation and in good faith and after having seen the lease from their dealer to Westmoreland Paving Company and after having attempted to determine the true state of the title and after having been told by Babich himself that he had leased the equipment. Immediately after repossession Deere again made every effort to learn the facts so that any mistake could be rectified. Their representatives were met with hostility. In fact the conduct of Babich based upon his own testimony was so hostile that it appeared to be unreasonable. In our view the action of Deere was not outrageous nor even improper.

On the issue of consequential damages the law of Pennsylvania is well settled that in an action for innocent conversion of personalty the damages are to be measured by the value of the property at the time of the taking plus interest to the time of recovery, see Wolfe v. Pennsylvania Co., etc., 322 Pa. 344, 185 A. 292 (1936); Plack v. Baumer, 121 F.2d 676 (3d Cir. 1941); 37 P.L.E. Trespass, § 111; Hill v. Canfield, 56 Pa. 454 (1867); Drennen v. Charles, 12 Pa.Super. 476 (1900). The case upon which plaintiff relies, Stone v. C. I. T. Corp., 122 Pa.Super. 71, 184 A. 674 (1936) is not controlling in our opinion.

Even though we had disregarded the rule set forth above there was no basis in plaintiff's case upon which the claim for consequential damages could have been submitted to the jury. The Vice President of Westmoreland Paving Company had clearly contradicted the testimony of Babich that Westmoreland Paving had leased the machinery for one year. He said that only he, or his superior, could approve leases and that the only lease he had approved was a month to month lease and when November had come Westmoreland had no further use for the equipment. In fact, we repeat, the November rental had never been paid prior to repossession of the equipment on November 22, 1969.

The remaining assignments of error require no comment.