## WILLAMETTE MANUFACTURING COMPANY *v.* BANK OF BRITISH COLUMBIA.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

Argued November 9, 1886. — Decided November 29, 1886.

It is within the power of a legislature which creates a corporation and grants franchises to it, to authorize it to sell those franchises.

A corporation which is authorized to sell its franchises is authorized to mortgage them.

A statute which confers upon a corporation the right to take water from a river and to conduct it through canals, and the exclusive right to the hydraulic powers and privileges created by the water, and the right to use, rent, or sell the same or any portion thereof, authorizes the corporation to mortgage such powers and privileges.

This was a suit to foreclose a mortgage. The case is stated in the opinion of the court.

*Mr. George H. Williams*, for appellant submitted on his brief, citing: *Black* v. *Delaware & Raritan Canal Co.*, 7 C. E. Green (22 N. J. Eq.), 130; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Memphis &c. Railroad* v. *Berry*, 112 U. S. 609; *Louisville & Nashville Railroad* v. *Palmes*, 109 U. S. 244; *Wilson* v. *Gaines*, 103 U. S. 417; *Morgan* v. *Louisiana*, 93 U. S. 217; *Head* v. *Amoskeag M'fg Co.*, 113 U. S. 9, and cases therein cited; *Cass* v. *Manchester Iron Co.*, 9 Fed. Rep. 640; *Stewart* v. *Jones*, 40 Missouri, 140; *Mahoney* v. *Spring Valley Water Co.*, 52 Cal. 159; *Abbot* v. *American Hard Rubber Co.*, 33 Barb. 578; *McCullough* v. *Moss*, 5 Denio, 567; *Head* v. *Providence Ins. Co.*, 2 Cranch, 127; *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Perrine* v. *Chesapeake & Delaware Railroad*, 9 How. 172; *Pearce* v. *Madison & Indianapolis Railroad*, 21 How. 441; *Barclay* v. *Talman*, 4 Edw. Ch. 123; *Maryland* v. *Bank of Maryland*, 6 G. & J. 205; *Farmers' Bank* v. *Beaston*, 7 G. & J. 421; *S. C.* 28 Am. Dec. 226; *Brinkerhoff* v. *Brown*, 7 Johns Ch. 217.

Mr. J. N. Dolph for appellee cited: *Morgan* v. *Louisiana,* 93 U. S. 217; *Sheets* v. *Selden,* 2 Wall. 177; *East Boston Freight Co.* v. *Eastern Railroad,* 13 Allen, 422; *McAllister* v. *Plant,* 54 Mississippi, 106; *Aurora Agricultural Society* v. *Paddock,* 80 Ill. 263; *Curtis* v. *Leavitt,* 15 N. Y. 9; *Thompson* v. *Lambert,* 44 Iowa, 239; *Van Arsdale* v. *Watson,* 65 Ind. 176; *Clark* v. *Farmers' Woolen M'fg Co.,* 15 Wend. 256; *Fay* v. *Noble,* 12 Cush. 1; *Ketchum* v. *Buffalo,* 4 Kernan (14 N. Y.), 356; *Whitewater Canal Co.* v. *Valette,* 21 How. 414, and cases cited there; *Commercial Bank* v. *Newport M'fg Co.,* 1 B. Mon. 13; *S. C.* 35 Am. Dec. 171; *State* v. *Mansfield,* 3 Zabriskie (23 N. J. L.), 510; *S. C.* 57 Am. Dec. 409; *New Orleans, &c., Railroad* v. *Delamore,* 114 U. S. 501; *Ragan* v. *Aiken,* 9 Lea, 609; *Houston & Texas Railroad* v. *Shirley,* 54 Texas, 125; *Miles* v. *Thorne,* 38 Cal. 335; *Randolph* v. *Larned,* 12 C. E. Green (27 N. J. Eq.), 557; *Leppencott* v. *Allander,* 27 Iowa, 460; *Bowman* v. *Wathen,* 2 McLean, 376; *Felton* v. *Deall,* 22 Vt. 170; *S. C.* 54 Am. Dec. 61; *Benson* v. *Mayor,* 10 Barb. 223; *Ladd* v. *Chatard,* 1 Minor (Ala.), 366; *Lewis* v. *Ganesville,* 7 Ala. 85; *Dundy* v. *Chambers,* 23 Ill. 369; *Bank of Middlebury* v. *Edgerton,* 30 Vt. 182; *Billing* v. *Breining,* 45 Mich. 65.

Mr. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the District of Oregon.

The Willamette Woolen Manufacturing Company, the appellant, was incorporated by an act of the territorial legislature of Oregon on the 17th day of December, 1856, which act is in the following language:

"SEC. 1. *Be it enacted by the Legislative Assembly of the Territory of Oregon,* That George H. Williams, Alfred Stanton, Joseph Watt, Joseph Holman, Daniel Waldo, William H. Rector, E. M. Barnum, J. G. Wilson, and J. D. Boon, and their associates, stockholders in the joint stock company known as the 'Willamette Woolen Manufacturing Company,' and their successors, are hereby declared a body corporate and

politic by the name and style of the 'Willamette Woolen Manufacturing Company,' for the purpose of creating and improving water powers and privileges and manfacturing; and the present organization of said joint stock company shall continue until changed by said corporation.

"SEC. 2. Said corporation shall have power to purchase, receive, and possess lands, goods, chattels, and effects of every kind, the same to use and dispose of at pleasure; to contract and be contracted with; to sue and be sued; to have a common seal, and the same to use and change at pleasure; and to ordain and establish such by-laws and regulations as it may deem expedient for its own government and the efficient management of its affairs, consistent with the Constitution and laws of the United States and the laws of this Territory.

"SEC. 3. The capital stock of said corporation shall not exceed two hundred thousand dollars, and shall be divided into shares of not less than one hundred dollars each, transferable as its by-laws may provide.

"SEC. 4. Said corporation shall receive, possess, and enjoy all the property, interests, and rights of said joint stock company, and shall hold and have, and may enforce by legal remedies, all claims and obligations due or to become due, given or that may be given to said company; and all stock due or to become due to said company shall be payable to and collected by said corporation; and the individual members of said corporation shall each and singular be liable for the corporate debts of said company, contracted while a member of the same, to the amount of his share of the corporate property.

"SEC. 5. Said corporation shall have power to bring water from the Santiam River to any place or places in or near Salem, to be brought as far as practicable through the channel or the valley of Mill creek; and for such purpose may enter upon lands and also said creek, and do all things proper and suitable for a safe, direct, and economical conveyance of water as aforesaid; but said corporation shall do no unnecessary injury to private property, and shall be answerable in damages to any person whose property is injured by its acts.

"SEC. 6. Said corporation shall have the exclusive right to

the hydraulic powers and privileges created by the water which it takes from the Santiam River, and may use, rent, or sell the same, or any portion thereof, as it may deem expedient.

"SEC. 7. This act shall be in force from and after its passage."

The present suit was brought by the Bank of British Columbia against that corporation to foreclose a mortgage executed by it on the 24th day of August, 1875, to secure the payment of promissory notes made by the company, amounting originally to over eighty thousand dollars, of which, at the time of bringing the suit, only about fifteen thousand remained unpaid. To the bill of foreclosure the defendant, in the Circuit Court, filed an answer and a plea. The plea, which raises the only question in issue here, is as follows:

"And for a further defence and plea to said bill of complaint, said defendant, the Willamette Woolen Manufacturing Company, alleges that it is now, and continuously for more than twenty years next last past has been, incorporated under and by virtue of an act of the Legislative Assembly of the Territory of Oregon, passed December 17th, 1856, and entitled 'An Act to incorporate the Willamette Woolen Manufacturing Company.' That the fifth section of said act provides as follows, viz. :

"'SEC. 5. Said corporation shall have power to bring water from the Santiam River to any place or places in or near Salem, to be brought as far as practicable through the channel or the valley of Mill creek; and for such purpose may enter upon lands and also said creek, and do all things proper and suitable for a safe, direct, and economical conveyance of water as aforesaid; but said corporation shall do no unnecessary injury to private property, and shall be answerable in damages to any person whose property is injured by its acts.'

"That the rights and powers enumerated in said section five of said act, and thereby conferred upon defendant, constitute the personal and exclusive franchise of defendant as such corporation, and that said mortgage mentioned in plaintiff's bill of complaint included said franchise, and of right ought by this honorable court to be declared null and void and of no

effect so far as the same includes said franchise. That it is necessary to the use, enjoyment, and maintenance of defendant's said franchise that defendant shall have and retain the exclusive use and enjoyment of all the property mentioned and described in plaintiff's mortgage set out in said bill of complaint which relates to the power to bring water from said Santiam River to said Salem."

That court overruled the plea, and decree was rendered for the plaintiff ordering a sale of all the mortgaged property upon failure to pay the sum found due within a reasonable time. Sale was accordingly made by the commissioner appointed for the purpose, and the manufacturing company brought this case here on appeal.

The assignments of error made in this court are as follows:

"The court below erred —

"1st. In holding that the mortgage was valid as to the franchise created by said section five of the act.

"2d. In entering a decree for the sale of said franchise.

"3d. In determining said question in the affirmative.

"4th. In holding that said corporation had power to divest itself of its corporate franchise by mortgage, sale, or otherwise, without the consent of the Legislature of Oregon."

The mortgage commences its granting clause, descriptive of the property conveyed, by saying that the said corporation "doth hereby grant, bargain, sell, assign, transfer, set over, and convey unto the party of the second part " — meaning the the bank — "its assigns, successors, and representatives, all the following real property lying and being situate in the county of Marion, and State of Oregon, more particularly described as follows, to wit : " Then follows a minute description by metes and bounds and courses and distances of the realty upon which the mill property of the party of the first part now stands. " The design hereof being to convey the entire parcel of realty, together with the tenements and buildings, together with all and singular the machinery of every kind used therein or thereabout. Also the power to bring water from the Santiam River to any place or places in or near Salem, the same to be brought as far as practicable through the channels or the val-

ley of Mill creek, and for such purposes may є .ter upon lands, and also said creek, and do all things proper and suitable for a safe and economical conveyance of water, as aforesaid; also the exclusive right to the hydraulic powers and privileges created by the water from the Santiam River; also all the rights and powers of the said party of the first part in and to the water rights, powers, and privileges obtained under its charter or articles of incorporation, including all rights and property of kindred character acquired by said party of the first part in any way or from any person since the incorporation aforesaid. Also all that tract or parcel of realty upon which the party of the first part has now in operation a sash factory"—giving a full description of it—"together with all the rights of way now owned by said party of the first part, as appurtenant to or necessary to the use or enjoyment of said rights, privileges, and easements in the water aforesaid, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in anywise appertaining," &c.

The decree of the court finds " that the defendant corporation, the Willamette Woolen Manufacturing Company, did have full authority and power to make and execute the mortgage now here sought to be foreclosed, and that it conferred upon the plaintiff corporation, by said mortgage, a lien upon all its right and power, under said Territorial act, to take water from the Santiam River in upon its franchise touching the taking, carrying, and using of said water, and all the rights, privileges, and uses incident thereto," and orders a sale of the property as mortgaged unless the defendant company pay the sum of $15,606.51 within thirty days from the date of the decree.

The right of the corporation to make a mortgage which should cover everything described in this mortgage under ordinary acts of incorporation, or the provisions usually found in such acts, might be an interesting question. It also admits of doubt whether the mortgagor corporation in this case intended, by the use of the general language found in this instrument describing what was conveyed, to transfer all of

the powers, the privileges, and the franchises conferred upon it by its charter. It was undoubtedly desirable, in making this mortgage, that if it became necessary to sell under it, the purchaser, in getting the realty, the houses, the mills, the manufacturing machinery, the conduits through which the water-power came to operate upon that machinery, and all the tangible property necessary to the use of that water-power, should also get the privilege of using it; and so far as the privilege of using that particular water appropriated to these mills was a franchise or special grant to the corporation, it was intended to be conveyed in the mortgage. For all the powers which it was necessary to exercise in the use of this water as a manufacturing motive power, the Woolen Company intended to create a lien upon the property it mortgaged.

But there were franchises created by the act of incorporation which would be of no value to the purchaser, which, in the nature of things, could not be transferred to it, and which were not intended to be transferred to it. Obviously among these was the right to exist as a corporation. The sale under the decree of foreclosure did not annihilate the Willamette Woolen Manufacturing Company so that it no longer had any existence. Nor was its power to make contracts, to sue and be sued, to have a common seal, to buy other lands and sell them, to make by-laws, and to do many other things which an incorporated body can do, and which are described in the second section of its charter, ended with such sale. Nor is it all clear that, if it had sold outright the property which it mortgaged to this company, it would not have still had the right to take other water from the Santiam River and conduct it to other mills and other places for the purposes of manufacture, provided it did not interfere with or limit the water and the use of the water which it had sold.

It is, however, unnecessary to examine these matters very critically. The charter itself seems to have given unlimited power to the company to sell everything it had, including its exclusive right to the hydraulic powers and privileges created by the water which it takes from the Santiam River. Such is the express language of the sixth section of the charter.

Describing what it is that is granted to this corporation with regard to the water and its use, and, in the same language, what it may do in the way of disposing of it, it says, "said corporation shall have the exclusive right to the hydraulic powers and privileges created by the water which it takes from the Santiam River, and may use, rent, or sell the same, or any portion thereof, as it may deem expedient."

There seems to be here no limitation upon the power of the corporation to dispose of whatever it acquired under the statute which called it into being. Describing in the same sentence that it shall have "the exclusive right to the hydraulic powers and privileges created by the water which it takes from the Santiam River," it declares that it "may use, rent, or sell the same," which means all of it; and to show that it does mean all of it, there is added after the words "sell the same," the further clause, "or any portion thereof, as it may deem expedient."

It is hardly necessary to say that this right to sell in these general and strong terms, or to rent or to use it, must include the power to mortgage it. A mortgage is in effect a sale with a power of defeasance, which may ultimately end in an absolute transfer of the title. This language is in its nature inconsistent with a limitation upon the power of the company to transfer its rights and privileges. If there is anything peculiar in the word franchise it must include, in any definition that can be given it, this word "privileges;" especially when the statute speaks of "the exclusive right to the hydraulic powers and privileges."

As we have already said, it would be unprofitable to go into an inquiry of how far the corporation could have transferred these exclusive rights and privileges to anybody else, and how far it could have divested itself of them, and of its power to use them if no such language had been in the charter. But the supreme legislative power, which had the right to make this corporation, and to which it would be subject more or less in its exercise of the powers conferred upon it, has also said, as it had a right to say, that it may sell these privileges, may part with them, and may transfer them to other persons, and we

think this language is sufficient warrant for anything actually conveyed by the mortgage and by the decree of the court. The decree is, therefore,

*Affirmed.*