# COSTELLO et al. v. ACCO TRANSPORT CO. et al.—232 S. W. (2d) 297.

Western Section.   October 14, 1949.

Petition for Certiorari denied by Supreme Court, February 10, 1950.

414

Wils Davis, Dick Busby, Harsh, Pierce, Cochran & Rickey, and Boyte Howell, Jr., all of Memphis, for complainants.

Charles H. Hudson, Jr., and Wrape & Hernly, all of Memphis, for defendants.

ANDERSON, P. J. The bill was brought by Costello and Gregory on May 6, 1947, against the Acco Transport Company, a corporation, with situs in Memphis, and its Secretary-Treasurer, S. A. Godman. The purpose was to have the Chancellor declare the rights of the parties under a chattel mortgage held by Acco, insofar as it covered certain motor common carrier vehicle rights evidenced by a certificate of convenience and necessity issued by the Interstate Commerce Com-

mission. The complainants had acquired said operating rights from one Jamison, subject however to the mortgage thereon held by Acco. The bill prayed that the defendants be enjoined from foreclosing the mortgage, the indebtedness secured thereby having been in default for some time. The bill was presented to the Chancellor for a temporary restraining order. He declined to prohibit the sale under the mortgage which had been advertised, but enjoined the defendants "from disposing of or effecting in any manner the certificate" of necessity and convenience as described in the bill until further orders of the Court. Later, Costello and Gregory were also enjoined from disposing of, transferring, or incumbering the certificates. The sale was had and Acco, being the only bidder, became the purchaser at a price of $5,000.

The cause proceeded to issue and thereafter to a trial on oral evidence pursuant to a stipulation that it be so tried, resulting in a decree wherein the Chancellor held that the mortgage held by Acco was a valid encumbrance on operating rights evidenced by the certificate of necessity and convenience; that Acco was not estopped to assert its rights under said mortgage; that the sale under said mortgage at which Acco had become the purchaser of said operating rights was a valid sale. Title thereto was accordingly divested out of complainants Costello and Gregory and vested in Acco. From this decree the complainants appealed.

The assignments of error present for decision the following principal questions:

(1) Whether the issue as to the existence and validity of the mortgage was res judicata by reason of the decrees entered in a certain other cause in the Chancery Court?

(2)   Whether by reason of its acts, conduct and representations Acco was equitably estopped from enforcing the lien of the chattel mortgage?[1]

(3)   Whether the mortgage and sale thereunder was invalid by reason of the fact that prior consent of the Interstate Commerce Commission to the execution of the mortgage and the foreclosure thereof was not obtained?

To understand the import of the questions presented, it is necessary to relate the circumstances giving rise to the controversy.   Prior to October 18, 1943, the defendant Acco Transport Company, was engaged in business as a common carrier by motor vehicle, operating between Memphis, Tennessee, and Texarkana, Texas, by virtue of the certificate of convenience and necessity issued to it by the Interstate Commerce Commission in Docket Nos. Mc-103,364, Sub. Nos. 106-107.   On September 27, 1943, by a written contract, Acco sold to one Jamison its rights under said certificate and also certain motor vehicles and office furniture for a total purchase price of $30,000.   Under the contract of sale, $4,000 was payable upon the approval by the Interstate Commerce Commission of the transfer from Acco to Jamison of the certificate.   The remainder of $26,000 was evidenced by twenty-six promissory notes of $1,000 each, payable at three months' intervals.   The contract of sale provided that the deferred purchase money notes were to be secured by a chattel mortgage to be executed by Jamison upon the equipment and the certificate of necessity and convenience so purchased by him.   On September 21, 1943, Jamison deposited in escrow the

---

[1] In the opinion filed, the question of estoppel is discussed at length and disposed of adversely to the complainant's contention, but since it turned in the main upon an issue of fact and involved no novel question, in the interest of brevity it was ordered by the Court that this portion of the opinion be omitted from the published report.

$4,000 cash payment to be delivered to Acco upon the approval by the Commission of the transfer of the certificates of necessity and convenience to Jamison. The transaction was submitted to the Commission by the joint application of the parties. On October 18, 1943, that body granted the application and approved the transfer of the certificates. On the same day, Acco executed and delivered to Jamison a bill of sale, covering the certificates and other properties sold, and Jamison authorized the delivery of the fund in escrow to Acco. Concurrently with the execution of the bill of sale, Jamison executed and delivered to Acco the series of notes provided by the contract of sale and also the chattel mortgage securing same. On November 5, 1943, the mortgage was filed for registration in the Register's Office of Shelby County, Tennessee, and thereafter duly recorded. In addition to the office furniture and rolling stock covered by the mortgage, Jamison thereby conveyed to Acco as security for the mortgage indebtedness, "all of its rights, title and interest in and to its certificates of convenience and necessity issued by the Interstate Commerce Commission in Docket Nos. Mc-103,-364, Sub. 1; Mc-103,364, 6; and Mc-103,364, 7."

Later a certificate was issued to Jamison on April 10, 1944, bearing Docket Nos. 103,364, Sub. 1, covering the same operating rights formerly held by Acco.

The operating rights in question were first established under what is commonly called the "grandfather's clause" of the Federal Motor Carrier Act, Title 49 U. S. C. A. Sec. 301 et seq. With the permission of the Commission, they were transferred by the original holder to the Overnight Motor Service, Incorporated, and by that concern to Acco on October 14, 1943. As already stated,

the Commission authorized the transfer of these rights from Acco to Jamison on October 18, 1943, and on April 10, 1944, issued to him a certificate evidencing the same.

Jamison seems to have been devoid of financial resources as well as of integrity. He borrowed $4,000 from the complainant Costello with which to make the cash payment on the purchase of the business from Acco. After the sale was consummated, Costello and Jamison entered into a contract whereby the former was to receive one-half of the net profits of the business. This agreement was dated October 23, 1943, five days after the mortgage was given.

On June 17, 1944, Jamison entered into another partnership contract with the complainant Gregory, whereby he sold to the latter a one-half interest in the business. Neither of the complainants knew that Jamison had had any dealings with the other with reference to the business, until shortly after the transaction with Gregory, when they became apprised of the situation, and thereupon brought suit in the Chancery Court known as Docket No. 47,310. The bill in that case was filed on or about July 1, 1944. The object was to set up the partnership interest of the complainants in the business. There was a prayer for a receiver to take charge of the business and on July 5, 1944, an order was entered appointing H. W. Clark, receiver; and among other things, authorizing him to issue receivership certificates to be secured by a lien in all the assets of the company, subject to the mortgage held by Acco.

The business seems to have been operated by the receiver until May 26, 1945, when, with the permission of the Interstate Commerce Commission, the rights evidenced by the receivership certificates were leased by Costello and Gregory to the Refrigerator Truck Lines.

The rentals were paid the receiver and about $2,000 had been realized from this source at the time the present litigation arose. This lease gave the lessee an option to purchase, and on August 1, 1947, after the present suit was filed, a contract was entered into whereby, conditioned on the outcome of the present suit, Costello and Gregory agreed to sell the operating rights evidenced by the certificate to Refrigerator Truck Lines for the sum of $10,000, with the understanding that the rents paid under the lease should be applied on the purchase price.

On November 8, 1944, a consent interlocutory decree was entered in Cause No. 47,310. This decree recited the transactions had by Jamison with Costello and Gregory, respectively; described the property of which the business in question consisted, including the certificate of necessity and convenience, the office furniture and the rolling stock; and divested all right, title and interest in the property described, out of Jamison, and vested a one-half undivided interest in each of the complainants. The decree specifically recited that the property described and the vestiture of title in the complainants was subject to the mortgage held by Acco.

At this time, Acco was still trying to collect its indebtedness secured by the mortgage, and payments had been made thereon by the receiver and by Costello and Gregory, through the receiver. A number of conferences had been held between counsel for the respective parties regarding the payment of the indebtedness.

Just before the note due July 18, 1944, became due, at the request of the complainants Costello and Gregory, a written agreement was entered into by them and the receiver and Acco, extending the time of the payment

of this note to August 18, 1944, and the payment thereof was personally guaranteed by Costello, Gregory and Clark the receiver. By agreement dated August 26, 1944, this note was assigned to one Hollinger. The agreement recited that the note was one of a series of notes secured by the mortgage recorded in Book 461, page 584, and that the payment of this particular note was subordinated to the remainder of the series of notes of which it was a part; and that said remaining twenty-three notes should have preference over said note so subordinated, both as to payment and as to mortgage securing them. The money with which this note was paid actually came from Costello and Gregory and the note was subsequently delivered to them.

Acco was not a party to Cause No. 47,310, but prior to the said interlocutory decree, counsel for Costello and Gregory advised counsel for Acco that when this consent decree was entered, the transfer thereby of the certificate of necessity and convenience would be made, subject to the mortgage held by Acco, and as said, the decree so specifically provided. Following the entry of the aforesaid consent decree, an application was filed with the Interstate Commerce Commission by Costello, Gregory and Clark the receiver, and Jamison, for a transfer to Costello and Gregory of the operating rights evidenced by the certificate of necessity and convenience. The application was sworn to by all of the parties. It contained a recital that the consideration for the transfer was $12,950.50, and that the net worth of the business at that time was $5,000. Under the heading, "liabilities or other liabilities," it contained a recital, "mortgage on equipment and operating rights, $24,000." A copy of the consent decree was attached to the application.

The application was granted by an order of the commission made December 6, 1944.

Three of the notes secured by the mortgage were paid by the receiver during the receivership. Costello and Gregory furnished any balance needed to make these payments by reason of the fact that the receiver did not have the requisite funds. At the time the bill in Cause No. 47,310 was filed, the rolling stock was in a dilapidated condition and scattered about the country. The receiver sold some of this equipment and some of the office equipment got into the hands of third parties who claimed that it did not belong to Jamison. There were a number of conversations between the receiver and counsel for Acco about this equipment.

No payments having been made for some time on the notes secured by the mortgage, Acco filed a petition in Cause No. 47,310, asking permission of the Court to foreclose. There was no objection on the part of Costello or Gregory, and on July 30, 1945, the Chancellor granted the application, ordering that after the foreclosure had been had, Acco should report back "to this Court the results of said foreclosure proceedings, and shall deposit with the Clerk of this Court, any sum realized at the foreclosure over and above the amount of the debt secured thereby."

On May 21, 1946, final decree was entered in Cause No. 47,310. Therein the Chancellor decreed that the suit was not a general creditor's suit and that the claims filed by third parties against Jamison were not properly filed and should be stricken without prejudice to the rights, of said third parties to file independent action against Jamison. The decree further granted the right to the receiver to file an independent action against

Costello for a balance claimed to be due from Costello, and that Acco should have the right to file an independent action against the receiver and the sureties on his bond for an alleged unauthorized disposition of property covered by its mortgage.

At the time the final decree was entered on May 21, 1946, no question was raised as to the validity of the mortgage or the right of Acco to foreclose the sale.

On September 14, 1946, pursuant to a right reserved in the mortgage, Acco, by registered letter, notified Jamison, Costello and Gregory, that all of the unpaid balance of the indebtedness secured by the mortgage was declared to be due and that foreclosure proceedings would be started.

Advertisement was duly made according to the terms of the mortgage and, as already stated, on the day the sale was to be had the bill in the present case was filed.

The complainants first contended that the "proceedings, judgments and decrees entered in the former litigation (Cause No. 47,310) are res judicata and an absolute bar to further litigation as regards this certificate." We are unable to follow this contention and are not certain that we fully understand it. In the argument in the brief it is said by complainants that "in the former suit No. 47,310, the appellee, Acco Transport Company, Inc., had opportunity to present any question or claim it had with reference to this certificate of convenience and necessity, but it neglected and failed to do so." Acco was under no duty to assert its rights in that suit. The bill was not a general creditor's bill and it was so expressly held by the Chancellor in deciding the case. Upon the contrary, it was exclusively a suit between the present complainants on the one

hand and Jamison on the other, whereby the former sought to set up their interests in the business which had been acquired by Jamison from Acco. Acco was not a party to that suit when it was filed, nor when the interlocutory decree was entered, divesting all interest in the business out of Jamison and vesting it in the complainants. As already said, this decree specifically recited that the property therein described and the vestiture of title was subject to the mortgage held by Acco. It is true that notwithstanding the bill was not a general creditor's bill, Acco, some time after the entry of the interlocutory decree recognizing the mortgage held by it, filed the intervening petition seeking permission to foreclose the mortgage and that this permission was granted without objection on July 30, 1945. So far as appears, there was no contention at that time or at any other time prior to the filing of the bill in the present cause that the mortgage was invalid or that Acco had abandoned its lien, or was estopped to insist upon its enforcement. In the situation described, we perceive no basis for a conclusion that the proceedings in the other cause were res judicata in the sense that the defendants are now estopped by the decrees therein to insist upon the enforcement of their rights.

■ Moreover, the record does not reflect enough of the proceedings in the other cause to enable the Court to determine the issue raised by a plea of res judicata. While the decrees in the other suit were introduced in evidence, only a portion of the original bill was read into the record and it is not sufficient to indicate with the requisite certainty the scope of the issues. A plea of res judicata cannot be determined without reference to pleadings demonstrating the scope of the issues to an extent that will enable the Court to determine the ques-

tions essentially raised by the plea. Gibson's Suits in Chancery, Sec. 329.

The Chancellor held that "it is a very close question whether the said decree (in Cause 47,310) is res judicata as to the validity and existence of the mortgage here involved." We apprehend that the Chancellor had in mind not the possibility that the decree in the other cause was res judicata as against the defendants, but as against the complainants in their contention touching the validity of the mortgage and the estoppel of the defendants to assert the lien thereof. We too think this a serious question; but, since the Chancellor did not pass on it and since the pleadings in the other cause do not fully appear in the record, we are not disposed to rest our conclusion on its determination.[2]

The remaining contention is that the mortgage was invalid. Two primary grounds are submitted as a basis for this contention. The factual basis for the first is that, as already pointed out, the certificate was not actually issued until April 10, 1944, whereas the mortgage was executed on October 18, 1943.

It is argued that "to hold that this is a valid mortgage on the certificate of convenience and necessity, the Court is bound to say 'that a valid mortgage can be given on a certificate that was not in existence at the time the mortgage was made'." There is no merit in this contention. It is true the mortgage does purport to be on the certificate itself, but obviously it was the intention of the parties to convey as security for the mortgage indebtedness to property interest of the mortgagor of which the certificate was evidence insofar as this could be lawfully done. On the same day the

---

[2]The discussion and disposition of the complainant's contention based on the doctrine of estoppel is omitted for the reasons stated in footnote 1.

mortgage was executed, the Commission by a formal order approved the sale of the business by Acco to Jamison, including the interest represented by the certificate previously issued to Acco, by granting the joint application of Jamison and Acco for its transfer. That the issuance of a new certificate to Jamison was delayed until April 10, 1944, is of no consequence, for as said, this certificate was nothing more than formal evidence of the ownership of the operating rights over the specified route which had theretofore been established and which were acquired by Jamison from Acco with the approval of the Commission evidenced by the order made on the same day the mortgage was executed.

The second ground on which the complainants base their contention that the mortgage was invalid presents a more serious question. The submission is that the transaction represented by the mortgage did not have the prior approval of the Interstate Commerce Commission as required by pertinent rules and regulations adopted by that body pursuant to the authority conferred upon it by the Motor Carrier Act, Title 49, Sec. 301 et seq.

Subordinately in the same connection, it is insisted that a holder of a certificate of necessity and convenience has no property right which can be the subject of a mortgage.

The Motor Carrier Act, U. S. C. A. Sec. 307, provides that a certificate of public necessity and convenience be issued to any qualified applicant therefor, authorizing the operation covered by the application, "if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part (chapter), and the requirements,

rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity . . .''

Section 312(a) provides that ''Certificates, permits, and licenses shall be effective· from the date specified therein, and shall remain in effect until suspended or terminated as herein provided, . : . (and) that no such certificate, permit, or license shall be revoked (except upon application of the holder) unless the holder thereof willfully fails to comply, within a reasonable time, not less than thirty days, to be fixed by the Commission, with a lawful order of the Commission, made as provided in Section 304(c), commanding obedience to the provision of this part (chapter), or to the rule or regulation of the Commission thereunder, or to the term, condition, or limitation of such certificate, permit, or license, found by the Commission to have been vio· lated by such holder''.

Section 312(b) provides that, ''Except as provided in Section 213 (313 of Title 49), any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe.''

Section 304(f) provides that ''notwithstanding any other applicable provision of this Act . . . to the extent that it may be in the public interest, the Commission may modify, change, suspend or waive any order, certificate, permit, license, rule, or regulation issued under this part (Sections 301 to 327 of this Title).''

■ The right to transfer the certificate granted by Section 312(b) includes the right to mortgage the interest of the holder evidenced thereby. Willamette

Woolen Mfg. Co. v. Bank of British Columbia, 119 U. S. 191, 193, 7 S. Ct. 187, 30 L. Ed. 384; cf First National Bank of Weatherford v. Holliday, 5 Cir., 47 F. (2d) 67, and cases cited.

■ There were introduced in evidence the regulations issued by the Commission which were effective on December 1, 1943. These cannot be given controlling effect because the mortgage in question was executed on October 18, 1943. Counsel realize this but assert that the Court will take judicial notice of the applicable rules and regulations which were in force at the time the mortgage was given. Notwithstanding a diligent effort, we have not been able to lay hands on any authoritative publication containing the regulations which were superseded by those effective December 1, 1943. However, for our convenience counsel for Acco have quoted the rule in their brief and we take it from that source. It is as follows:

"Rule 1 General

"a. As used herein, the term 'Transfer' shall include all transactions, not included within section 210a(b) and 213 of said act, whether by purchase and sale, lease, contract to operate, or otherwise, whereby a right to operate as a motor carrier in interstate or foreign commerce arising out of the Motor Carrier Act 1935, is transferred from one person to another. No transfer by means of attempted pledge of any such rights by any action purporting to foreclose a pledge upon or lien against any such rights, or by any attempt to levee (levy) executions against any such rights, in satisfaction of any such judgment or other claim against the holder thereof, shall be effective without compliance with these rules

and regulations and the prior approval of the Commission as herein provided".

The record discloses that the Commission looks upon operating rights once established over a specific route as a continuing right and that the mere issuing of a certificate in the name of a party other than the owner who originally acquired the right does not mean that it is to be regarded as a new operating right originating as of that date; that their orders are permissive in the sense that upon application they permit the transfer of the original operating rights from one party to another and do not regard the approval of such transfer as approval of any new authority; that the transfer of operating rights theretofore established subject to the approval of the Commission is comparable to the transfer of real estate insofar as the change of title is concerned; that the Commission recognizes mortgages of certificates through an application filed with it for authority to transfer the operating rights from the mortgagor to the purchaser after a foreclosure sale.

There can be no doubt that the holder of such a certificate cannot by a contract or otherwise confer upon another the right to conduct the operations contemplated by the certificate. That authority can only come from the Commission upon a consideration of factors prescribed by the Motor Carrier Act. But whether, apart from the permission to conduct operations as a motor common carrier over the specified route granted him by the Commission, the holder of the certificate has an interest which can be transferred to another by contract, is, we think, a different question.

It was under consideration by the Middle Division of this Court and disposed of in an opinion by Judge Felts,

Presiding Judge of that Section. It arose in a general creditor's suit styled Brown et al. v. Smith et al., Tenn. App., 225 S. W. (2d) 91, 93. There it appeared that the holder of a certificate of necessity and convenience executed a mortgage thereon on April 11, 1938, to secure an indebtedness due a creditor.

When the holder of the mortgage attempted to enforce it, he was met with the contention that the mortgage was invalid because the interest of the holder evidenced by such a certificate are not a mere personal privilege but only a revokable right to operate under it. In disposing of this contention this Court said:

"We cannot agree with this view. The rights under such a certificate are not a mere personal privilege but a franchise which is transferable as property. Title to it may be transferred by operation of law or act of the owner, as in case of his bankruptcy to his trustee, or his death to his personal representative, or by his sale to the purchaser, as was done in this case; and it may be mortgaged, as was also done here. First Nat. Bank of Weatherford, Tex. v. Holliday, 5 Cir., 47 F. (2d) 67; Watson Bros. Transp. Co. v. Jaffa, 8 Cir., 143 F. (2d) 340; Lennon v. Habit, 216 N. C. 141, 4 S. E. (2d) 339; see Royal Blue Coaches, Inc., v. Delaware River Coach Lines, Inc., 140 N. J. Eq. 19, 52 A. (2d) 763.

"This nature of the franchise is recognized by the Federal Motor Carrier Act of 1935. The 'grandfather' clause provides that where the carrier or his 'predecessor in interest' was operating on June 1, 1935, the Commission is to issue the certificate to him without proof of public convenience and necessity (U. S. C. A., Title 49, Sec. 306). The Act also provides that 'any certificate or permit may be transferred, pursuant to such rules

and regulations as the Commission may prescribe' (U. S. C. A., Title 49, Sec. 312(b).

"The Commission had prescribed no such rule when this mortgage was made. Copies of the rules and regulations later prescribed have been furnished us. We find nothing in them requiring notice to or approval by the Commission of the execution of a mortgage on the operating rights under a certificate, or of the foreclosure of such a mortgage. All that seems to be required is that the Commission must give its approval or permissive authority for the transfer of such rights to a purchaser at a foreclosure sale.

"This view is borne out by cases in which the Commission has recognized the titles of purchasers at foreclosure sales under such mortgages, and has given its permissive authority for transfer of the operating rights to such purchasers. Riss & Co., Inc.—Purchase—Monark M. Freight Sytem, Inc., 38 MCC 563-571; Hall—Purchase—Magee Truck Lines, Inc., 38 MCC 529-539; R. W. Lee—Control; Lee Motor Freight, Inc.—Purchase (Portion)—Breeding Motor Freight Lines, Inc., etc., 6 Fed. Carrier Cases, ICC, CCH Rep. 329, p. 488.''

■ We think the reasoning of the Middle Division of the Court is sound and in the present state of the decisions of the Federal Courts, feel at liberty to follow it.

In support of their contention the complainants cite the case of In re Rainbo Express Inc., Bankrupt, James B. Richardson, Trustee, v. National Acceptance Co. of Chicago, decided by the U. S. Court of Appeals for the 7th Circuit, on March 17, 1949, and they have furnished us a manuscript copy of that opinion, which has not as yet appeared in the reports.[2] Inquiry discloses that the

---

[2] In the case of In re Rainbo Express Agency, the petition to rehear was granted and the Court reversed its former holding. See 7 Cir., 179 F. (2d) 1.

publication of the opinion is being held up pending the disposition of a petition to rehear. So far as we have been able to ascertain, the petition has not as yet been disposed of.

In that case it appears to have been held that a chattel mortgage executed by a motor carrier on its operating rights under a certificate of public necessity and convenience issued by the Interstate Commerce Commission, did not give the mortgagee a lien on the operating rights as against the carrier's bankruptcy trustee, where the mortgagee had not obtained the Commission's consent to such a lien at the time of the execution of the mortgage or at the time of the adjudication in bankruptcy as required by a rule of the Commission.

It must be conceded that that case does in a measure support in principle the contention of the complainants in the present case. But we think it is not only in conflict with the foregoing decision of this Court, but is in conflict in principle at least with the case of Breeding Motor Freight Lines v. R. F. C., 10 Cir., 1949, 172 F. (2d) 416, and Watson Bros. Transportation Co. v. Jaffa, 8 Cir., 143 F. (2d) 340. It is true that in the Breeding case the Court had under consideration a section of the Motor Carrier Act, rather than a regulation of the Commission but the decision is in point in principle. It was there held that a judgment entered in foreclosing mortgages on truck line property securing a note for $560,-000 could not be set aside on the ground that the note and mortgage were not approved by the Interstate Commerce Commission in advance of their execution pursuant to the requirement of Section 20a, Title 49 of the U. S. C. A. where the transfer of the certificate of necessity and convenience from the purchaser at the judicial sale to assignees of the purchaser was approved by the

Commission after hearing objections of the debtor truck line to such transfer.

The clear implication of this holding, we think, is that in a contest between the purchaser at a foreclosure proceeding and the mortgagor of a certificate of necessity and convenience, or his privies, the fact that there was no prior approval of the Interstate Commerce Commission of the mortgage or the transfer of the certificate is not, as between the parties, fatal to the validity of the transaction, notwithstanding a provision requiring prior approval of the Commission where it appears that the Commission did subsequently give its approval. Cf. First National Bank of Weatherford v. Holliday, 5 Cir., 47 F. (2d) 67.

The decision in the Jaffa case, supra, was based upon the principle that the mere fact that a contract or transfer is subject to the approval of a public agency makes it no less binding on the parties. Said the Court: ''But a man's obligation under his lawful contract is not a whit less binding upon him because of the fact that an approval of the transaction must be had before the party to whom he has obligated himself can receive full benefits.'' A number of cases supporting the controlling principle are cited in the opinion. Watson Bros. Transportation Co. v. Jaffa, supra, 143 F. (2d) page 346.

In the decision in the In re Rainbo case, as we understand it, the Court in a measure construed the regulations issued by the Commission in the light of the principle that a certificate of necessity and convenience to operate a motor carrier is a mere license or permit, personal in nature, and that an attempted sale or mortgage of such rights passes no title, legal or equitable, to the purchaser. With the greatest deference, we think

this principle is inapplicable. The Motor Carrier Act itself authorizes a certificate to be transferred. The only restriction is that the transfer must be accomplished pursuant to such rules and regulations as the Commission may prescribe. U. S. C. A., Title 49, Sec. 312 (b). Of course, the qualifications of a holder of a certificate to conduct the operations, that is, his fitness, willingness and ability to perform the service proposed, are purely of a personal nature and cannot be passed to another by contract or otherwise; but by authorizing a transfer of a certificate it seems to us that the Congress thereby necessarily recognized that the certificate evidences other rights which are of such a nature as that they may pass by contract or operation of law subject to the approval of the Commission.

It will be observed that in the Rainbo case the rights evidenced by the certificate were necessarily held to have passed by operation of law to the trustee in bankruptcy and were by him sold to another and the sale subsequently approved upon the joint application of the trustee in bankruptcy and such purchaser.

If the rights evidenced by the certificate were of such a nature as that they passed by operation of law without the prior approval of the Commission, it is not readily perceived why they could not be the subject of a contract.

The opinion in the Rainbo case cites another line of cases wherein it is generally held that franchise and contracts of governmental agencies cannot be sold, mortgaged or transferred in the absence of legislative authority. With due deference, it seems to us that this principle is also inapplicable because of the provision in the Motor Carrier Act expressly authorizing a trans-

fer of a certificate of necessity and convenience when made pursuant to the regulations of the Commission.

In the circumstances, the question in hand turns upon the proper interpretation of the Commission's regulation hereinabove quoted. Taken alone and read literally, this regulation seemingly would require the *prior* approval of the Commission before the title to or any interest in the rights evidenced by the certificate could pass from the holder thereof to any other person by any means whatsoever. For instance, in case of the bankruptcy of the holder, the certificate would not pass by operation of law to his trustee for want of the prior approval by the Commission. But all of the cases, including the Rainbo case, supra, recognize that the certificate and the rights evidenced thereby do pass to the trustee without the prior approval of the Commission. This does not mean, however, that the trustee could operate as a motor carrier without complying with the regulatory requirements of the Commission. As already said, the right to conduct such operations depends upon qualifications of a personal nature which cannot pass from one person to another and which must be found to exist by the Commission.

The regulations adopted by the Commission must be construed in the light of the powers of the Commission and the purpose of the regulations. The commission is not a court. It does not pass on property rights or say when the ownership of property can be transferred. Its authority is administrative and regulatory. It determines when the owner of a franchise can exercise the rights thereby covered, granting or withholding its permission, upon a consideration of the factors prescribed by the Federal Motor Carrier Act. Thus a

distinction, we think, is to be drawn between the owner-
ship of the property interest which depends upon the
general law and the regulation of the use of the property,
which is committed by Congress to the Commission as
an administrative body.

It will be observed that the regulation hereinabove
quoted provides that "no transfer by means of an at-
tempted pledge of any such rights or by any action
purporting to foreclose a lien upon or lien against any
such rights, shall be executed without . . . the prior
approval of the Commission as herein provided."

We think this means that as against the Com-
mission no such transfer of pledge shall be effective to
confer upon another the right to conduct the opera-
tions contemplated by the certificate until that body
has approved the transaction. It does not mean that
as between the parties and their privies the transaction
is not effective to transfer the property interest in the
certificate without the prior approval of the Commission.
In other words, the approval of the Commission must
be obtained before the transferee is authorized to con-
duct operations, but not necessarily prior to the execu-
tion or foreclosure of the mortgage.

The Commission itself has so construed its rules. In
the opinion in Brown v. Smith, supra, Judge Felts cites
a number of cases containing opinions and decisions by
the Commission, showing that it does not construe its
regulations to mean that the prior approval of the
execution of the mortgage as between the parties is
essential to the validity of the transaction represented
thereby.

Moreover, the Commission, at a session held on Au-
gust 4, 1949, amended its regulations by revoking

Section 179.1(d) and substituting in lieu thereof the following: "No attempted transfer of any operating right shall be effective except upon full compliance with these rules and regulations and until after the Interstate Commerce Commission has approved such transfer as herein provided. The mere execution of a chattel mortgage, deed of trust, or other similar document, does not constitute a transfer within the meaning of these rules, and does not require the approval of the Commission, unless it embraces the conduct of the operation by a person other than the holder of the operating right. A proposed transfer of operating rights by means of the foreclosure of a mortgage or deed of trust or other lien upon such rights, or by an execution in satisfaction of any judgment or claim against the holder thereof shall not be effective without compliance with these rules and regulations and the prior approval of the Commission."

It is proper to further note that in the Commission's order just preceding the foregoing passage, there appears the following: "It appearing that there is need for the revision of Section 179.1(d) of said rules to make more clear the meaning intended, and it further appearing that the proposed changes are merely clarifying and *do not involve any change in substance*". (Emphasis added.)

The change effected by the foregoing order was presumably made to meet the decision in the Rainbo case, and it makes certain that in none of the previous regulations did the Commission intend to make its prior approval essential to the validity of a mortgage of a certificate of necessity and convenience as between the mortgagor and his privies and the mortgagee. The order of August 4, 1949, is thus confirmatory of the in-

terpretation placed upon the Commission's regulations by the Middle Division of this Court in the case referred to supra.

In any view of the question there is manifestly a difference of opinion about interpretation of the regulation. In this situation the construction placed thereon by the Commission itself, as manifested by its orders and decisions, is entitled to great weight and we think must be given controlling effect. 15 C. J. S., Commerce, sec. 142, page 508; see also, Bowles v. Seminole Rock & Sand Co., 325 U. S. 410, 413, 414, 65 S. Ct. 1215, 89 L. Ed. 1700.

There is one other observation that should be made for the record. It is that when the complainants procured the decree in Cause No. 47310, divesting out of Jamison and vesting in them the title to the certificate of necessity and convenience, there was no prior approval of that transaction by the Commission. The consent of the Commission was subsequently obtained upon an application supported by the decree of the Court vesting in them the property interest in the certificate subject to the outstanding mortgage. Moreover, when Acco, upon intervening in that cause, sought and obtained permission to foreclose its mortgage, there was no contention by the complainants that the mortgage was invalid or that the prior approval of the Commission was necessary. Whether on these accounts the complainants are now in a position to assert the invalidity of the mortgage or the foreclosure for the reasons urged by them, is a question we do not decide, preferring to place our decision on other grounds. We mention it for the purpose of avoiding any implication which might otherwise arise.

Upon the whole case we are of the opinion that the Chancellor's decree is correct and it will be affirmed at the cost of the complainants. Needless to say it will be necessary for Acco to obtain the approval of the Commission before the foreclosure will be effective to confer upon Acco as the purchaser the right to conduct the operations contemplated by the certificate. This approval it has not heretofore been able to seek because of the restraining order issued at the inception of this case.