240 P.2d 1151

SHIPMAN et al. v. KLOPPENBURG et al.

No. 7754.

Supreme Court of Idaho.

Feb. 12, 1952.

Maurice H. Greene, Boise, and Frank L. Stephan, Twin Falls, for respondents.

Ray D. Agee and Arthur E. Babbel, Twin Falls, for appellants.

TAYLOR, Justice.

On October 1, 1945, W. G. Shipman and C. R. Shipman, doing business as Shipman Bros. Transfer Co., as sellers, entered into a written contract with L. W. Kloppenburg and Abby H. Kloppenburg, husband and wife, as buyers, for the sale of a trucking business and certain equipment. The pertinent provisions of the contract are as follows:

"That for and in consideration of $15,000. in hand paid by parties of the second part Parties of the first part agree to sell that part of their business known as their Long Haul Trucking business operating un-

**324**

der I.C.C. Permits No. MC–29791 and MC 29791 Sub. 1 to parties of the second part for the sum of $30,000. Above price to include One Kenworth Diesel truck Motor No. HB 6 37285 together with one Reliance Refer Semi. Also included in above sale shall be numerous parts and repairs for truck and semi.

"The said buyer, in consideration of the premises and the covenants and agreements herein contained, agrees to pay to the said seller the total sum of thirty thousand and no/100 dollars, lawful money of the United States of America, as the purchase price of said Long haul trucking operations as follows: fifteen thousand and no/100 dollars cash, on signing this agreement, receipt whereof is hereby acknowledged, and the further sum of $200. each and every month thereafter for the first year and 300.00 next 6 months, 600.00 each and every month thereafter until the balance of $15,000. has been fully paid. The monthly payments as above shall pay the payments on the principal and include the payments of interest. Monthly payments may be increased at option of buyer.

      *     *     *     *     *     *

"And said seller, on receiving such payment at the time and in the manner above mentioned, agrees to execute and deliver to said buyer or his assigns transfer of above operating rights, as soon as approved by Interstate Commerce Commission,

      *     *     *     *     *     *

"Time is the essence of this contract, and in case said buyer shall refuse or neglect to pay said installments of purchase promptly as agreed herein, it shall be optional with the said seller to declare this contract forfeited, and upon the making of such declaration all right of the said buyer to complete said purchase or to continue in possession of said truck and Operating rights shall immediately terminate, and said buyer shall forfeit all moneys paid to the said seller as purchase price, unless said seller shall otherwise elect.

"The said buyer shall be entitled to the possession of said truck & operating rights so long as the terms of this agreement are complied with, but a failure to comply with the same shall, at the option of the said seller, terminate the right of possession, and the said buyer shall surrender the possession of said truck and operating rights, if any, to the said seller, and any money paid by the said buyer by virtue of this agreement shall be retained and shall remain the property of said seller, as liquidated damages, and said buyer shall thenceforth be regarded as a tenant holding over after the expiration of his term and shall be liable to dispossession under the law relative to forcible entry and detainer."

At that time, apparently as a part of the transaction, the parties executed an application to the Interstate Commerce Commission for a transfer of the two operating permits from the sellers to the buyers. (The application bears date October 10th and is acknowledged under date of October 1,

1945). It appears from the record that the buyers did not have the money with which to make the down payment; that they had an application for a loan pending with the Fidelity National Bank of Twin Falls which had not been completed. So the closing of the deal was delayed. On October 27th, a payment of $3,000 was made. On December 11th a payment of $8,000 was made, and on the same day the sellers accepted the buyers' note for $3,500, due two years after date, as a payment on the $15,000 payable at the execution of the contract. Just how, or whether, the difference between the total of these three payments and the required $15,000 was paid, does not appear. But, evidently the sellers were sufficiently satisfied to proceed with the contract. The application for transfer was filed with the Interstate Commerce Commission December 3rd, and was granted and the transfer ordered by the commission under date of April 25, 1946.

The buyers became delinquent in their payments in late 1947, which delinquency continued to the time of judgment. Demand was made for payment of the delinquency on August 24, 1948, and on September 15, 1948, the demand not having been complied with, the sellers declared a forfeiture of the contract and demanded reassignment to them of the permits. In this notice of forfeiture and demand for reassignment the buyers were notified that if they did not comply an action would be commenced by the sellers to compel such reassignment.

This action was commenced on October 29, 1948. It is brought for the sole purpose of compelling the defendants, the buyers, to join with the plaintiffs in an application to the Interstate Commerce Commission for a transfer of the operating permits from the defendants to the plaintiffs. Neither the truck nor the trailer mentioned in the contract were demanded by or returned to the sellers. In their answer the defendants plead as a defense that they had paid on the contract $2,942.-95 interest and $29,309.11 principal, leaving a balance due of $680.89 principal and $91.62 interest, which they tender.

Upon trial the issue litigated was the amount paid and the balance due on the contract. The court found "That the defendants have failed to make all of the payments provided in said contract of sale and that there is now due and unpaid from the defendants to the plaintiffs under said contract of sale the sum of $16,258.55 principal, together with interest thereon from the 17th day of January, 1948, until paid at the rate of seven percent per annum, less the sum of $300.00 paid by the defendants to the plaintiffs in three installments of $100.00 each, one on April 10, 1948, one on May 12, 1948 and one on July 12, 1948; * * * that a retransfer of said operating rights from defendants to plaintiffs must be approved by the Interstate Commerce Commission under the Interstate Commerce Act, as amended [49 U. S.C.A. § 1 et seq.]; that in order to carry

out the terms of said contract relating to retransfer of said operating rights, it is necessary that plaintiffs and defendants jointly execute an application on forms provided by the Interstate Commerce Commission; that plaintiffs have submitted to the defendants an application for retransfer upon such forms, but that defendants have failed and refused to execute the same and will continue to so refuse unless compelled to do so by order of this Court." By its conclusions the court held that the plaintiffs were entitled to a decree requiring the defendants to join with them in an application for transfer of the permits; "That defendants by their inequitable conduct toward plaintiffs are not entitled to any equitable relief in this action relieving them from making the payments in said contract at the time and in the manner provided therein;" and that upon compliance with the decree the defendants are entitled to have the $3500 note surrendered to them for cancellation. Decree was entered accordingly on September 18, 1950.

After the trial defendants changed counsel. On the 28th of September their present counsel made a written tender and offer to pay to the plaintiffs "the sum of $18,940.98 as the balance owing on the contract sued on in said action and in payment of said balance and in satisfaction of the judgment and decree." On the same day they served and filed their application for a new trial on the alleged grounds of newly discovered evidence consisting of the tender and offer to pay, and that the court did not give or grant to the defendants an opportunity to pay the balance found due, but, instead forfeited property to the plaintiffs of a value exceeding $40,000. The application was accompanied by a supporting affidavit of one, O. D. Halvorson, in which he avers that the two operating permits are of a reasonable market value in excess of $40,000.

This appeal is from the judgment and the order denying the application for a new trial.

The appellants assign a want of proof to sustain the court in holding that the respondents are entitled to have the permits retransferred to them. Their first contention in this respect is that the contract does not provide for such retransfer. We think the provision in the contract that upon failure of the buyers to comply, their right of possession of the property is terminated and the "buyer shall surrender the possession of said truck and operating rights * * * to the seller", is sufficient for that purpose. An agreement by the buyers to surrender possession of the property would clearly imply an agreement to execute any instrument necessary to effect such surrender. Long v. Owen, 21 Idaho 243, 121 P. 99; Fidelity State Bank v. North Fork Highway Dist., 35 Idaho 797 at page 809, 209 P. 449, 31 A.L.R. 781. Although the court has no power to control any action the commission may take upon the application when made, it can re-

quire performance of their contract by the defendants to the extent that they are able to perform, by requiring them to join in the application for retransfer. Brubaker v. D'Orazi, 120 Mont. 22, 179 P.2d 538; Royal Blue Coaches v. Delaware · River Coach Lines, 140 N.J.Eq. 19, 52 A. 763; Costello v. Acco Transport Co., 33 Tenn. App. 411, 232 S.W.2d 297; Lennon v. Habit, 216 N.C. 141, 4 S.E.2d 339; First National Bank of Weatherford, Tex. v. Holliday, 5 Cir., 47 F.2d 67; Watson Bros. Transp. Co. v. Jaffa, 8 Cir., 143 F.2d 340; Annotation 15 A.L.R.2d 883.

■ It is next contended that the contract as originally drawn was modified by the parties in making the application to the Interstate Commerce Commission and the procuring of the order from the commission transferring the permits to the buyers. It is urged that by so doing the sellers waived the provision of the contract by which they retained title to the property pending performance; that the sale as to the permits became absolute and title thereto vested in the buyers; and that the sellers' remedy thereafter was limited to an action at law for the recovery of the purchase price. In support of this position the appellants point out the allegation in the complaint in which the plaintiffs allege that the defendants are the owners and holders of the permits, and that this allegation is admitted by them in their answer. A reading of the entire complaint, however, indicates that this particular allegation refers to the apparent legal title only, because the complaint as a whole is based upon the theory that there was no modification of the contract, and asserts plaintiffs' right to reclaim the permits.

■ The time when title passes is primarily governed by the intention of the parties. § 64–202 I. C. Lundberg v. Kitsap County Bank, 79 Wash. 75, 139 P. 769; 55 C.J., Sales, § 532; 47 Am.Jur., Sales, § 859. Ordinarily a voluntary or agreed transfer or relinquishment of the title by the seller, following a conditional sale, will make the sale absolute and vest the title in the buyer. Peasley v. Noble, 17 Idaho 686, at page 696, 107 P. 402, 27 L.R.A.,N. S., 216, 134 Am.St.Rep. 270; North Robinson Dean Co. v. Strong, 25 Idaho 721, 139 P. 847; Utah Implement Vehicle Co. v. Kesler, 36 Idaho 476, 211 P. 1079; American Law Book Co. v. Later, 44 Idaho 290, 256 P. 371; Birkeland v. Clearwater Concentrating Co., 64 Idaho 122, 127 P.2d 1047; Rodger v. Johnson, 148 Wash. 675, 270 P. 105; Martin Music Co. v. Robb, 115 Cal.App. 414, 1 P.2d 1000; Standard Finance Co. v. Townsend, 1 Wash.2d 274, 95 P.2d 786; Ravizza v. Budd & Quinn, Inc., Cal.App., 111 P.2d 720; Maxcy-Barton Organ Co. v. Glen Bldg. Corp., 355 Ill. 228, 189 N.E. 326, 95 A.L.R. 321, Annotation 332; Stone v. C.I.T. Corp., 122 Pa.Super. 71, 184 A. 674; In re Richardson Co., 2 Cir., 294 F. 451; 55 C.J., Sales, § 1207. In this case, however, we are not dealing with ordinary property. The per-

mits involved are a species of franchise. They represent a grant from the sovereign of an exclusive right to serve a particular public need. The value of such a right is obvious. However, its continuance is not a matter of right and depends upon the continued qualification of the holder and his continued compliance with applicable law and the rules and regulations of the granting authority. In this case the buyers could not carry on the trucking business during the period allowed by the contract for the payment of the purchase price, without being the holder of the operating rights represented by the permits. Interstate Commerce Act, § 309, U.S.C.A., Title 49; Costello v. Acco Transport Co., 33 Tenn.App. 411, 232 S.W.2d 297; U. S. v. Resler, 313 U.S. 57, 61 S.Ct. 820, 85 L.Ed. 1185; U.S.C.A. Title 49, § 312 and notes. True, they could have operated during that period under a lease, or contract to operate, first approved by the commission. Interstate Commerce Commission, Rules & Regulations, §§ 179.1, 179.2, 179.4. However, since they must be the holders during the contract interim, the transfer, as made in this case apparently simultaneous with and as a part of the contract, standing alone is not sufficient to evidence an intention of the parties that the title to the permits should vest absolutely in the buyers. So far as the record shows there is nothing in the subsequent conduct of either of the parties to indicate that either of them regarded the transfer as absolute. § 64–202 I.C. The plaintiffs in their notice of forfeiture claimed the right to surrender of the permits. To this defendants made no response. In their answer they did not plead a modification of the conditional sales contract by the transfer, nor did they on the trial offer any evidence in support of such a defense, nor was the question presented to the trial court by the motion for a new trial. The defense is urged for the first time on appeal. This, the appellants cannot do. Smith v. Sterling, 1 Idaho 128; Grant v. St. James Mining Co., 33 Idaho 221, 191 P. 359; Webster v. Potlatch Forests, 68 Idaho 1, 187 P.2d 527; Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686.

As to appellants' complaint that the judgment is wanting in equity in that it did not give them an opportunity to pay the balance found due and thus avoid forfeiture of their rights, we think the judgment is well justified by the record. C. R. Shipman, one of the original partners (the sellers), died on May 28, 1948. It was he who had been in a sense the business manager for the partnership. He kept the records and attended to the details of its business transactions, including the negotiation of the contract with the defendants and its subsequent performance. Upon the trial, the defendants, in support of their claim that they had paid substantially all that was due on the contract, testified that the defendant, W. L. Kloppenburg, had been employed by the partnership for a number of years prior to the date of the contract, during which time the partners had be-

come indebted to him in the sum of $17,-000; that at the time of negotiation of the contract it was agreed that the balance due him for past services was $15,000; and that the cancellation of this debt was agreed upon and accepted by the partners as the initial payment acknowledged in the contract. The evidence disproving this claim was so overwhelming and convincing as to indicate that it was utterly fictitious. The cross-examination of the defendants alone brands it spurious. The inference is warranted that it was an attempt on the part of the defendants to take advantage of the death of the man who would have been the best witness against them. In their answer they do not offer to do equity, nor do they plead extenuating circumstances. He who seeks equity must do equity. The trial court is sustained by this record in omitting from its judgment any provisions for redemption in favor of the defendants. Williams v. City of Emmett, 51 Idaho 500, 6 P.2d 475; Clinton v. Meyer, 43 Idaho 796, 255 P. 316; 2 Pomeroy's Equity Jur. § 460a; Pomeroy's Specific Performance § 379.

The respondents' brief was not filed within the time allowed by rule of this court, or as extended by stipulation. Appellants have filed a motion to remand the case for a new trial on that ground. The motion is denied. However, the rule (rules 52, 54, 55, 56 and 57) authorizes the imposition of terms. The filing in this case being some two months overdue, no costs will be allowed respondents for their brief.

The judgment is affirmed. Costs (except for brief) to respondents.

PORTER, THOMAS and KEETON, JJ., and WINSTEAD, D. J., concur.